**STANDARD HAVENS PRODUCTS, INC., Plaintiff–Appellee,**

v.

**GENCOR INDUSTRIES, INC., Defendant–Appellant.**

**No. 90–1048.**

United States Court of Appeals, Federal Circuit.

Feb. 23, 1990.

Donald H. Zarley, Edmund J. Sease and Kirk M. Hartung, Zarley McKee Thomte Voorhees Sease, Des Moines, Iowa, represented plaintiff-appellee.

Donald R. Dunner, Thomas H. Jenkins and James K. Hammond, Finnegan, Henderson, Farabow, Garrett and Dunner, Washington, D.C., were on the brief for defendant-appellant.

Before NIES, MAYER and MICHEL, Circuit Judges.

## ORDER

MICHEL, Circuit Judge.

The following have been submitted:

(1) Gencor Industries, Inc.'s renewed motion for a stay of execution of the judgment and imposition of the injunction entered by the United States District Court for the Western District of Missouri during the pendency of an appeal to this court;

(2) Standard Havens Products, Inc.'s opposition thereto;

(3) Standard Havens' supplemental opposition;

(4) Gencor's response to Standard Havens' supplemental opposition;

(5) Gencor's motion for leave to file a supplemental response;

(6) Standard Havens' motion for leave to file a response to Gencor's supplemental response;

(7) Gencor's motion for leave to file a second supplemental response;

(8) Gencor's letter to the court of January 19, 1990;

(9) Standard Havens' letter to the court of January 22, 1990; and

(10) Standard Havens' motion for leave to file a further supplemental response.

At the outset, the court's December 6, 1989, order specifically stated that it would consider only two submissions, i.e., the renewed motion for stay and the response thereto. Accordingly, all motions for leave to file supplemental oppositions or responses are denied.

In deciding whether to grant this motion, we must apply the four factors that always guide our discretion to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); *see E.I. DuPont de Nemours & Co. v. Phillips Petroleum*, 835 F.2d 277, 278, 5 USPQ2d 1109, 1110 (Fed.Cir.1987). Each factor, however, need not be given equal weight. *See Providence Journal Co. v. Federal Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir.1979) (granting stay pending appeal). Also, likelihood of success in the appeal is not a rigid concept. *See Washington Metro. Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 844 (D.C.Cir. 1977) (In ruling on a motion to vacate stay: When there "is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical proba-

bility of success" then "[a]n order maintaining the status quo is appropriate").

When harm to applicant is great enough, a court will not require "a strong showing" that applicant is "likely to succeed on the merits." *Hilton*, 481 U.S. at 776, 107 S.Ct. at 2119. Indeed, in *Hilton*[1] the Supreme Court acknowledged, "the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Id.* at 777, 107 S.Ct. at 2119. The Court specifically discussed, in the context of a habeas corpus petition, the "strong likelihood of success" factor and indicated a stay was appropriate: "[w]here [movant] establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a *substantial case* on the merits," *provided* the other factors militate in movant's favor. *Id.* at 778, 107 S.Ct. at 2120 (emphasis added). The Second Circuit, in a preliminary injunction case, said:

> it is not necessary that plaintiff's right to a final decision, after trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation....

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir.1953); *see Charlie's Girls, Inc. v. Revlon, Inc.*, 483 F.2d 953, 954, 179 USPQ 193, 193 (2d Cir. 1973).

■ Thus, the four stay factors can effectively merge, as our court impliedly recognized in *DuPont*, saying, "[i]n considering whether to grant a stay pending appeal, this court assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public." 835 F.2d at 278; *see Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387–88 (7th Cir.1984) (discussion of injunc-

tions applying a "sliding scale approach": "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor."); *see also Omega Satellite Prods. Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982) (chance of success of injunction movant must be "better than negligible" even if harm is very great); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir.1975) (if harm to injunction applicant is "sufficiently serious, it is only necessary that there be a *fair chance* of success on the merits" (quoting *C. Tennant & Sons v. New York Terminal Conference*, 299 F.Supp. 796, 799 (S.D.N.Y.1969))) (emphasis added).

Also in the context of preliminary injunctions, this court has likewise adopted a flexible approach in analyzing the four factors. *See, e.g., Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195 (Fed.Cir.1988) (The "factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested."); *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390, 2 USPQ2d 1926, 1930 (Fed. Cir.1987) ("The magnitude of the threatened injury to the patent owner is weighed, in light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error.... No one element controls the result."); *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 n. 7, 219 USPQ 686, 692 n. 7 (Fed.Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983) (Where likelihood of success "is less forceful ... a movant would have to make a stronger showing of irreparable harm in order to tip the balance of equity in his favor.").

■ Standard Havens' patent (Hawkins) claims: "A method for continuously pro-

---

1. While *Hilton* was not a general civil case, but involved a habeas corpus proceeding, the Supreme Court recognized the appropriateness of analogizing general civil case standards for such proceedings. *See* 481 U.S. at 776 n. 5, 107 S.Ct. at 2118 n. 5.

ducing an asphaltic composition ... the steps of said method comprising: ... isolating a zone of said rotating drum from said *hot gas stream....*" (emphasis added). After the jury verdict, but before entry of judgment against Gencor on August 9, 1989, the Deputy Assistant Commissioner (Commissioner) of Patents and Trademarks, *sua sponte*, ordered reexamination because the Hepburn patent, which is pertinent prior art, "teach[es] (a) a zone isolated within a rotating drum for mixing aggregate with asphalt and (b) that the zone is isolated *from the hot gases* produced by the burner." Commissioner Initiated Order for Reexamination, Patent No. 4,787,938, at 2 (July 10, 1989) (emphasis added).[2] Although it is disputed and uncertain whether the original examiner considered Hepburn, the Commissioner's order stated, "If the examiner 'considered' the Hepburn patent during prosecution of the application ... the examiner apparently overlooked or did not fully appreciate those portions of Hepburn which teach" that the "zone is isolated from the hot gases produced by the burner." *Id.* That teaching of Hepburn "raise[s] a substantial new question of patentability." *Id.*

With regard to the likelihood of success on appeal, Gencor points out that the Commissioner ordered reexamination[3] explicitly because the Hepburn patent taught isolating a zone from the hot gas stream. Gencor argues that, as in *DuPont* where a stay was granted, the mere existence of conflicting views on validity as between a court and the Patent and Trademark Office supports its contention there exists an important legal question regarding validity. *Du-*

*Pont*, however, cannot control the disposition of this motion because of factual differences. In *DuPont* the harm to the nonmovant was minimal. DuPont, unlike Standard Havens, was completely divesting itself of the relevant line of business and had licensed all willing competitors, a factor the court treated as nearly dispositive. *DuPont*, 835 F.2d at 278. Here, of course, Standard Havens continues in its business and vigorously asserts its right to exclude all others. Nevertheless, just as in *DuPont*, here, too, there is a substantial legal question regarding validity. *Id.*

The interpretation in the Commissioner's letter ordering reexamination as to the scope of the Hawkins claims, and the statement that the Hepburn patent does teach isolating a mixing zone from the hot gas stream, at the very least raises a substantial question whether, in light of Hepburn, the Hawkins invention would have been obvious. Of course, "reexamination proceedings and court actions involving challenges to validity [are] distinct and independent...." *In re Etter*, 756 F.2d 852, 857, 225 USPQ 1, 4 (Fed.Cir.), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985); *see Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427, 7 USPQ2d 1152, 1155–56 (Fed.Cir. 1988).

Gencor, in addition, may prevail in the appeal without showing that the judgment must be reversed if it shows that the district court abused its discretion in denying its motion for a new trial. An order vacating the judgment would be success on the merits of the appeal. In this connection, Gencor argues that the admission of cer-

---

**2.** The Commissioner initiated less than 1% of all reexaminations over the past eight years, and 93% of those he did institute resulted in cancellation or amendment of the claims. *See* United States Patent and Trademark Office, Reexamination Filing Data at 1, 5 (June 30, 1989); Appendix to Emergency Motion for Stay, *Standard Havens v. Gencor*, No. 90–1048 at 152, 156 (Fed. Cir. filed Oct. 30, 1989).

**3.** Although we do not rely on it, we take judicial notice of the "adjudicative fact" of the January 8, 1990, first office action on reexamination, rejecting the Hawkins claims. Gencor submitted a copy of the first office action to this court with a letter dated January 19, 1990; thus,

the office action is now part of the record in this motion. *See* Fed.R.Evid. 201(b)(2) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."); *Massachusetts v. Westcott*, 431 U.S. 322, 323 n. 2, 97 S.Ct. 1755, 1756 n. 2, 52 L.Ed.2d 349 (1977) (public records "may be judicially noticed"); 37 C.F.R. § 1.11(d) (1989) ("All papers or copies thereof relating to a reexamination proceeding which have been entered of record in the patent or reexamination file are open to inspection by the general public....").

tain evidence was improper and prejudicial to its case before the jury. Gencor also asserts that the action by the PTO in withdrawing approval of a certificate of correction, and in *sua sponte* ordering reexamination, is newly discovered evidence within the meaning of Federal Rule of Civil Procedure 60(b). These facts, which are not controverted, raise serious questions of law which could necessitate a new trial.

In assessing Gencor's basis for asserting it will prevail on the merits of the appeal, we determine that whether or not applicant has shown a strong likelihood of success, it has demonstrated not only a "fair" or "better than negligible chance" of succeeding on the issue of obviousness, but a "substantial case" on each of the asserted grounds.

With regard to the equities, Gencor alleges, and the affidavits of both its Executive Vice President and independent accountant corroborate, that without a stay it is likely to suffer irreparable harm in the form of employee layoffs, immediate insolvency, and, possibly, extinction. Standard Havens argues, however, that *Windsurfing International, Inc. v. AMF, Inc.*, 782 F.2d 995, 228 USPQ 562 (Fed.Cir.), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986), precludes a stay in this case. There our court said "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Id.* 782 F.2d at 1003 n. 12. Standard Havens' reliance on *Windsurfing* is misplaced. *Windsurfing* involved the improper denial of an injunction, not a stay pending appeal. In that case we held that the district court abused its discretion in refusing to enjoin one infringer, despite having granted injunctions as to all other infringers, giving as its sole reason the small size of the former's business. *Id.* at 1003. Certainly, *Windsurfing* does not overcome the equi-

ties of a case. Nor can *Windsurfing* be applied mechanically. If it were, no stay pending appeal could ever issue in an infringement case. Yet such stays must be available under Rule 8(a) of the Federal Rules of Appellate Procedure because neither it nor case authority excludes infringement cases.

If Standard Havens does not prevail on appeal, then Gencor's bankruptcy will be for naught. On the other hand, because of Gencor's shaky financial condition, already encumbered physical assets, and failure to obtain even a partial bond, Standard Havens alleges that its capability to execute its judgment will seriously erode during the pendency of the appeal if a stay is granted. But Standard Havens already stands behind various secured creditors and therefore may not have a realistic likelihood of fully executing its judgment even now. It is speculative, moreover, that Standard Havens' prospects for recovery of the full judgment will further diminish substantially with a stay. Nor has any showing been made, or claim asserted, of noncompensable injury such as lost market share. *See Atlas Powder Co. v. Ireco Chem.*, 773 F.2d 1230, 1233, 227 USPQ 289, 292 (Fed.Cir.1985) (Statute allows injunctive relief "to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money."). We can discern there may be some risk of not being able to collect the damages assessed, but neither its probability nor impact can be quantified. Although at a hearing held pursuant to our earlier order, the district court made certain predictions, including that at a distress sale, Gencor's physical assets would likely draw far less than their estimated value, no evidentiary record was made to support such predictions.[4] We note, too, that Gencor is proposing that it be subjected to certain financial restrictions and obligations during the pendency of the appeal.

---

4. "In a distressed sale situation, the alleged equity would likely not be realized thus minimizing if not eliminating any security that it would otherwise provide." Order, *Standard Havens Prods. v. Gencor Indus., Inc.*, No. 88–1209, CV–W–3, at 3 (W.D.Mo. Dec. 1, 1989). While coun-

sel filed informational letters, they cannot and do not support the predictions as if they were findings of fact based on record evidence. Hence, we see no need to consider whether the predictions have been shown by Gencor to be clearly erroneous.

Although the restrictions and obligations in no way approach guarantees, they are not insubstantial.

Each party argues that the fourth factor—public interest—favors its position. Neither has been very convincing on this point, however, and their arguments essentially negate one another. Thus, we determine that the fourth factor favors neither party.

### Conclusion

We view whether a stay pending disposition of this appeal should issue as not only complex and controverted but also a close question. On balance, however, we determine that Gencor's motion should be granted. Gencor has shown a substantial legal question exists regarding validity and that it has a substantial chance of prevailing when our court decides this appeal.[5] The balance of harms clearly tips in its favor. Standard Havens' harm is speculative and in any event cannot threaten its viability. On the other hand, a substantial amount of relevant record evidence indicates that Gencor's reasonably expected harm would be both catastrophic and irreparable. Without a stay, Gencor may well cease to exist.

Accordingly,

IT IS ORDERED THAT:

(1) Gencor's renewed motion for a stay pending appeal is granted, subject to fulfillment of the conditions set forth in (3) and (4) below.

(2) All other motions for leave to file supplemental oppositions or responses are denied.

(3) In accordance with Gencor's proposed restrictions:

(a) Gencor is enjoined against disposition of its assets, as set forth in paragraph 7 of the district court's August 8, 1989, order.

(b) A security interest in all of the physical assets of Gencor, subservient only to Gencor's existing secured creditors, is granted to Standard Havens to secure payment of the judgment rendered by the district court on August 8, 1989, which judgment included:

$5,931,000.00 with prejudgment interest from November 29, 1988 at a rate of 8.5% on the patent claims;

$2,284,000.00 on the contract claim;

costs incurred by Standard Havens;

postjudgment interest on the two judgment awards and the costs at the statutory rate; and any court-awarded royalties for infringing sales after the date of the judgment with interest.

(4) Gencor shall establish an escrow account[6] to which it shall contribute $50,000.00 for each drying unit of the type adjudged at trial to infringe the patent-in-suit that is sold during the pendency of the appeal.

---

**5.** Of course, nothing said or decided by the motions panel regarding the stay has any effect whatsoever on the later merits decision by the merits panel.

**6.** Gencor proposed contributing $40,000.00 to an escrow account for each drying unit, adjudged at trial to infringe, sold, based on esti-

mated net profits. We, however, decline to impose Gencor's figure and instead set the escrow amount at $50,000.00, which is within the $48,000.00 to $75,000.00 range proposed by Standard Havens as the minimum "reasonable royalty."