**MINOR METALS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 97–194C.

United States Court of Federal Claims.

Aug. 5, 1997.

## ORDER

MOODY R. TIDWELL, III, Judge.

Plaintiff's emergency motion for stay or injunction pending appeal, filed July 31, 1997, is *DENIED*.

Plaintiff initially filed a complaint and a motion for preliminary injunction in this matter on March 27, 1997. Defendant filed a motion for summary judgment on April 10, 1997. After briefing by the parties and oral argument, the court granted a preliminary injunction on May 20, 1997. In the opinion in which the injunction was granted, the two major issues raised by the parties were addressed. The first issue related to the authority of the DNSC to preclude the use of all or none bids in its solicitations. The second issue concerned the authority and actual means of implementation of a domestic preference provision contained in the solicitation. After due consideration of the evidence presented at the time, the court concluded that the DNSC had the authority to prohibit all or none bids, but improperly implemented the domestic preference provision.[1] Thus, the government's motion for summary judgment was granted in part and denied in part.

On June 4, 1997, defendant filed a status report in which a request to lift the injunc-

tion was made. Defendant indicated that in response to the court's May 20, 1997 order, the solicitation which was initially the subject of this dispute would be canceled once the injunction was lifted.[2] Defendant also notified the court in its status report that it intended to issue a new solicitation which would not contain a domestic preference provision. Plaintiff's counsel was sent a copy of the evaluation terms to be included in the new solicitation on June 4, 1997.[3]

In response, plaintiff filed its own status report, as well as a motion for leave to file a supplemental complaint, on June 11, 1997. Due to concern that the reissuance of a new solicitation would moot its entire complaint, plaintiff sought to amend the complaint to include the new solicitation as well. Plaintiff assured the court, as well as defendant, that the purpose of the amendment was to preserve its right to appeal this court's May 20, 1997 decision and "not [to] require any responsive pleading by the Government nor any additional proceedings before the Court because the issue relating to the all or none provision ... is identical to the issue already decided by the Court in its May 20, 1977 (*sic*) Order." Pl's. Status Report & Motion for Leave to File Supplemental Complaint, filed June 11, 1997, at 2–3.

> In short, the matter need not be relitigated. When the Court issues its final decision, it can grant judgment to the Government on Count I of the Supplemental Complaint and dismiss Count II as moot. Therefore, the Government will not be prejudiced nor the final disposition of the case delayed by granting this motion.

*Id.* at 3. Based on plaintiff's assurances, and on the condition that the court lift the injunction and dismiss counts I and II of the supplemental complaint, defendant agreed not to oppose plaintiff's motion to file a supplemental complaint.[4] Def's. Resp. to Pl's.

---

1. Many of the arguments raised in petitioner's current motion were never directly raised during the initial proceedings, either in briefs or at oral argument. To now argue that the court reached an improper decision in its May 20, 1997 opinion, based on arguments and positions first raised in plaintiff's July 31 filing, is not proper.

2. Defendant initially stated that the solicitation had been canceled. This misstatement was later corrected in a subsequent filing with the court.

3. This was done pursuant to the Protective Order signed by the court on May 14, 1997.

4. After conversing with counsel for defendant, the government agreed that a finding for defen-

Motion for Leave to File Supplemental Complaint, filed June 16, 1997. In light of the status reports filed with the court, the injunction was lifted by court order on June 18, 1997, and plaintiff's motion was granted. Judgment on count I was entered for defendant and count II was dismissed as moot.

The fact that plaintiff now appears before this court and in effect seeks to relitigate the issues already decided seems to violate the intent of the parties as expressed in its filings with the court. Plaintiff now asserts that "the Court: 1) incorrectly broadened the scope of the ... 'Stock Piling Act'... and 2) erred in concluding that DNSC may, as a matter of law, justify a decision to change its rules based solely on the personal opinion of its Administrator." Pl's. Emergency Motion for Stay or Injunction Pending Appeal, filed July 31, 1997, at 2.

█ Even if plaintiff's previous assertions are not enough to support a denial of its motion for stay or injunction pending appeal, the legal standards for such action have not been met. Four factors must be considered when determining whether to grant such a motion. These factors are: 1) likelihood of prevailing on the merits of the appeal; 2) irreparable injury to the movant if the relief is denied; 3) no substantial harm to other parties if the stay is granted; and 4) consideration of the public interest. *Aerolease Long Beach v. United States*, 31 Fed. Cl. 342, 373, aff'd, 39 F.3d 1198 (Fed.Cir.1994). However, "it must be remembered that 'a stay pending appeal is always an extraordinary remedy.'" *Golden Eagle Refining Co. v. United States*, 4 Cl.Ct. 622, 624 (1984) (quoting *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Express & Station Employees v. National Mediation Bd.*, 374 F.2d 269, 275 (D.C.Cir.1966)). "As an extraordinary remedy, a stay pending appeal requires more than base suppositions of disapproval from a party dissatisfied with the holding of a judicial tribunal." *Aerolease Long Beach*,

31 Fed. Cl. at 373. "[U]nless the last three factors are heavily weighted in plaintiff's favor, it must make a more substantial showing of the likelihood of success on the merits." *Golden Eagle*, 4 Cl.Ct. at 624 (citations omitted). After considering each of the factors, as well as " 'assess[ing] movant's chances for success on appeal and weigh[ing] the equities as they affect the parties and the public,' " the court finds that plaintiff's motion must be denied. *See Standard Havens Products v. Gencor Indus., Inc.*, 897 F.2d 511, 513 (Fed. Cir.1990) (quoting *E.I. DuPont de Nemours & Co. v. Phillips Petroleum*, 835 F.2d 277, 278 (Fed.Cir.1987)).

█ The first factor to consider is whether plaintiff is likely to succeed on the merits. Even though plaintiff stresses that no one element controls the decision to issue or deny a stay or injunction, the bulk of its argument focuses on this point. However, for the reasons expressed in this court's opinion of May 20, 1997, the court finds that plaintiff is not likely to succeed on the merits.[5] Further discussion on this point is unwarranted. Plaintiffs have provided the court with no substantive information or argument that would compel issuance of the instant emergency motion.

█ As for the second prong, plaintiff claims it will suffer irreparable injury if its motion is not granted because MMI will be denied any meaningful relief if its motion is denied and it should ultimately prevail. In essence, plaintiff claims that failure to impose a stay or injunction would result in a lost opportunity to acquire and resell the materials covered by the solicitation and this constitutes irreparable injury. This is arguable. Plaintiff's argument amounts to an assertion that its potential lost profits from the purchase and sale of the cobalt at issue would result in irreparable injury. However, economic harm without more, does not seem to

dant on count I would be the same as dismissing the count and was therefore acceptable.

**5.** The court disagrees with plaintiff's assertion that the May 20, 1997 opinion incorrectly broadened the scope of the Stockpiling Act. The court also disputes plaintiff's categorization of the court's ruling with respect to the DNSC's deci-

sion to prohibit all or none bids. A look at the depositions, hearing testimony, and briefs submitted by the parties during all phases of this litigation indicate that more than an arbitrary decision by the Administrator was involved in the agency reaching its decision.

rise to the level of irreparable injury. *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed.Cir.1983) (implying that irreparable injury requires a showing of more than just economic harm). Even if such harm were enough to rise to the level of irreparable injury, plaintiff is not in any way precluded from participating in the solicitation at issue. MMI has the same chance of obtaining cobalt from DLA–COBALT–006 that all other bidders have. MMI may still obtain the desired amount of cobalt if it outbids its competitors. Thus, the harm alleged is purely speculative. Additionally, plaintiff argues that denial of its motion for stay or injunction would result in future DNSC solicitations, containing all-or-none prohibitions, that would "likely" cause irreparable harm. Plaintiff's argument is misplaced. The mere possibility of future harm from solicitations as yet unannounced cannot constitute irreparable harm sufficient to issue an injunction. *See Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1273 (Fed.Cir.1985) (holding that "mere apprehension of potential future infringement, ... [w]ithout more, ... cannot justify the issuance of preliminary equitable relief.").

As for the third factor, plaintiff argues that there is no harm or prejudice to the government if a stay or injunction is granted. Plaintiff raises a valid point in that if the government is precluded from prohibiting all or none bids, it may be in the government's best interest to wait until bidders like MMI can submit all or none bids. However, in light of this court's ruling on the validity of the all or none prohibition, plaintiff's argument fails. As for plaintiff's argument that there is no urgency on the part of the government to dispose of the cobalt and that there is no impact on national defense by delaying the sale, this is arguably true. However, the court must also consider any impact a delay in the DNSC's cobalt sales may have on other parties.[6] In fact, the entire cobalt market is conceivably affected by delaying this and future sales. *See Gold-*

en *Eagle*, 4 Cl.Ct. at 624. Buyers and sellers relying on the materials being offered during this sale all have an interest in having the solicitation proceed.[7] The extent of this harm is not precisely identifiable, but it must be factored into the court's decision. *Golden Eagle*, 4 Cl.Ct. at 624. Thus, it appears to be in the public interest for the sale to proceed as planned. Therefore, plaintiff has not demonstrated sufficient harm or prejudice to satisfy this prong and to justify injunctive relief.

Finally, plaintiff argues that the public interest is served by granting the requested relief. Plaintiff is correct in noting that the public has an interest in honest, open, and fair competition when dealing with government sales. In fact, this was one factor which led this court to issue the injunction on May 20, 1997. It was noted that the government was about to engage in a sale which procedurally violated applicable law and therefore the court felt it proper to intervene and prevent such action. As a direct result, the government eliminated the unsound practice and has altered its solicitation. Thus, the court is not unmindful of the public interest. However, the public interest is also served by allowing the government to proceed expeditiously with sales conducted in a manner consistent with honest, open, and fair competition. In light of this court's previous ruling, it appears that this solicitation meets those requirements. Therefore, the court finds that it would violate public interest to delay the current solicitation.

For the foregoing reasons, plaintiff's motion for stay or injunction pending appeal is denied. The DNSC is permitted to award contracts under the current cobalt solicitation, notwithstanding plaintiff's current appeal.

**IT IS SO ORDERED.**

---

**6.** The effect on other parties can also be a consideration within the fourth prong.

**7.** An April 7, 1997 article in "American Metal Market" interviewed cobalt traders to get their reaction to continued delays in the solicitations for cobalt. "Some cobalt traders ... said the

delay could contribute to cobalt's rise in price and exacerbate an already tight market." Noella Kertes, *Further Delays Looming in Stockpile Cobalt Sale*, American Metal Market, Apr. 7, 1997, *available in* 1997 WL 8675946. "'This isn't healthy for the market,' one cobalt trader said." *Id.*