JWK INTERNATIONAL CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant,

and

LTM INC., Defendant–Intervenor,

No. 01–26C.

United States Court of Federal Claims.

May 10, 2001.

Cyrus E. Phillips, IV, Washington, DC, for plaintiff.

Erin E. Powell, Washington, DC, with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant. Mitzi S. Phalen and Russell Spindler, Assistant Counsel, Office of Counsel, Naval Air Warfare Center, of counsel.

Devon E. Hewitt, McLean, VA, attorney for intervenor, LTM Inc. Alex D. Tomaszczuk and Daniel S. Herzfeld, McLean, VA, of counsel. David W. Baldwin, President, LTM Inc., Havelock, NC, of counsel.

## OPINION [1]

MEROW, Senior Judge.

In the post-award bid protest which preceded plaintiff's instant motion for an injunction pending appeal, the incumbent contractor, JWK International Corp. ("JWK") challenged the decision of the Department of the Navy ("Navy") to award a contract, for acquisition logistics management integration services, to LTM, Inc. ("LTM"). On April 13, 2001 an Order was entered in which one count of the complaint was dismissed due to plaintiff's failure to establish standing to proceed with the alleged cause of action. Further, by that Order, JWK's motion for judgment upon the administrative record was denied and defendant's motion for judgment upon the administrative record was granted.[2]

On April 16, 2001, JWK filed a Notice of Appeal from that decision. On April 18, 2001, JWK filed the instant Motion for Injunction Pending Appeal pursuant to Rule 62(c) of the Rules of the Court of Federal

---

1. This Order was originally filed under seal on April 23, 2001. On May 7, 2001, an Order was entered allowing the filing, on behalf of all parties, of Plaintiff's Notice of Additional Proposed Redactions and Motion for Leave to File Out of Time. It is noted that neither counsel for the government nor counsel for the Intervenor in this matter signed Plaintiff's Notice of Additional Proposed Redactions although counsel for the government telephoned chambers on May 4, 2001, and advised that the redactions were to be submitted by plaintiff on behalf of all parties. Intervenor has neither proposed redactions nor commented upon the plaintiff's submissions.

Based upon the plaintiff's representation that the parties have conferred and agreed that there are no proposed redactions to this document, in conjunction with government counsel's representation that plaintiff was authorized to make that assertion, the Order is being re-filed and made available in the public record of this matter today, May 10, 2001.

2. The Intervenor, LTM, filed documents in support of the government's Motion for Summary Judgment upon the Administrative Record, but did not move on its own behalf.

Claims ("RCFC"). For the reasons stated below, it is considered that JWK has not presented evidence to support a finding that the Court should enjoin performance of the contract. Accordingly, JWK's Motion for Injunction Pending Appeal is denied.

### Jurisdiction

◼ As a preliminary matter, it is well established that "once final judgment is entered and a timely notice of appeal has been filed, the trial court loses jurisdiction over the case except to act in aid of the appeal or to correct clerical errors." *Yachts America v. United States*, 8 Cl.Ct. 278, 280 (citations omitted)(considering motion pursuant to RCFC 60(b), although Notice of Appeal had been filed because Court was acting in furtherance of appeal), *aff'd*, 779 F.2d 656 (Fed. Cir.1985), *cert. denied sub nom., Wilson v. United States*, 479 U.S. 832, 107 S.Ct. 122, 93 L.Ed.2d 68 (1986).

However, RCFC 62(c)[3] provides in relevant part:

[w]hen an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the [C]ourt in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as is considered proper for the security of rights of the adverse party.

◼ This provision has been interpreted as providing that jurisdiction to grant a stay of the Court's own judgment continues to reside in this Court until the Court of Appeals issues its mandate. *See e.g., Rakovich v. Wade*, 834 F.2d 673, 673–74 (7th Cir.1987)(determining that "district court retains the power throughout the pendency of the appeal to simply preserve the status quo by granting a stay of its judgment"); *see also* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2908, at 529 (2d ed.1995)("[a]lthough subdivisions (c) and (g) of ... [FRCP] 62 are read together, and the power to act with regard to an injunction pending an appeal exists in both the trial and appel-

late courts, applications for action of this kind 'ordinarily' must be made in the district court").

In the Order issued April 13, 2001, this Court denied, *inter alia*, JWK's motions for permanent and preliminary injunctions. Accordingly, pursuant to RCFC 62(c) this Court retains the power to determine whether to stay its own judgment pending appeal and jurisdiction over the instant motion is appropriate.

### Analysis

◼ It is well established that the Court considers four factors in determining whether the extraordinary measure of staying performance pending an appeal is appropriate. *Minor Metals, Inc. v. United States*, 38 Fed. Cl. 379, 381 (1997); *Golden Eagle Refining Co. v. United States*, 4 Cl.Ct. 622, 623 (1984); *see also Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 512 (Fed.Cir.1990)(establishing four factors for consideration of motion for injunction pending appeal in patent case); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed.Cir.1987) (same). These factors are: (1) a likelihood that plaintiff will prevail on the merits of the appeal; (2) a demonstration that plaintiff will suffer irreparable injury unless the stay is granted; (3) a showing that the stay would not pose substantial harm to other interested parties if granted; and (4) a showing that no harm will be inflicted upon the public interest. *Minor Metals*, 38 Fed. Cl. at 381; *Golden Eagle Refining Co.*, 4 Cl.Ct. at 623; *see also Standard Havens Prods.*, 897 F.2d at 512; *E.I. DuPont de Nemours*, 835 F.2d at 278. These factors do not form a rigid set of rules for determining whether a stay is appropriate. *Standard Havens Prods.*, 897 F.2d at 513. Rather, the case law contemplates that in each case the Court will adopt a flexible approach to balancing the four factors. *Id.* (citations omitted). The stronger the showing of likelihood of success on the merits, the less heavily the balance of harms need tip in JWK's favor. Conversely, if the harm factors weigh heavily in JWK's favor, plaintiff only needs to demonstrate a substantial case on the merits. *Id.*

---

**3.** RCFC 62(c) is patterned upon Rule 62(c) of the Federal Rules of Civil Procedure ("FRCP") and

is similar in both language and effect. RCFC 62(c)(1992); FRCP 62(c)(2000).

## 1. Likelihood of Success on the Merits

Looking first at the likelihood of JWK's success upon the merits of its appeal, plaintiff argues that the Court incorrectly applied the law and misconstrued the facts of this matter. As supported by the discussion contained in this Court's April 13, 2001 Order, the Administrative Record in this case does not support plaintiff's allegations of a defect in the procurement procedure.

As discussed in detail in the April 13, 2001 Order, the Solicitation clearly set forth the four factors to be considered by the government in evaluating offer proposals for an award. Administrative Record ("AR") 271. These factors were: Technical, Management, Past Performance and Cost. *Id.* The Solicitation specifically stated that the Technical factor was more important than the Management factor which was more important than the Past Performance factor, which was more important than the Cost factor. AR 289.

JWK has apparently abandoned the majority of its prior arguments before this Court and focuses now upon its allegations that the Navy failed to conduct meaningful discussions upon the Cost proposal. In so doing, the disappointed offeror completely ignores the crucial fact, stated in the April 13, 2001 Order, that in accordance with the Solicitation and the Source Selection Plan, the Navy considered three factors other than Cost and ultimately determined that LTM's rating was superior to that of JWK in the Technical and Management areas of the proposals. AR at 2308; 2312; 2317; 2319–20. Moreover, JWK completely disregards the clear statement in the Solicitation that the Cost aspect of the proposal was the least important of the four factors considered. AR 289. Although the legal and factual bases for the Court's findings, that the Navy's decision to award the contract to LTM was rational and supported by the administrative record, have already been discussed in full in the April 13, 2001 Order, a brief reiteration of the portion of that Order now disputed is useful.

Pursuant to Section 15.306(d)(3) of the Federal Acquisition Regulations ("FAR") procuring agencies are generally required to conduct discussions with all responsible offerors who submit proposals within the competitive range. FAR 15.306(d)(3) provides in relevant part:

> The contracting officer shall ... indicate to, or discuss with, each offeror still being considered for an award, *significant weaknesses, deficiencies, and other aspects of its proposal* (such as cost, price, technical approach, past performance, and terms and conditions) *that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award.*

48 C.F.R. § 15.306(d)(3) (emphasis added).

■ The discussions "are intended to maximize the government's ability to obtain the 'best value' in a contract award based on the requirements and the evaluation factors set forth in the solicitation." *Mantech Telecomm. & Info. Sys. Corp.,* 49 Fed.Cl. 57 (2001) (citing *Dynacs Eng'g Co. v. United States,* 48 Fed.Cl. 124, 130 (2000)); FAR 15.306(d)(2). To this end, the Navy has broad discretion in conducting discussions. *Advanced Data Concepts, Inc. v. United States,* 43 Fed.Cl. 410, 422 (1999), *aff'd,* 216 F.3d 1054 (Fed.Cir.2000).

■ The procuring agency does not have to identify every item that might improve an offeror's proposal. *Dynacs,* 48 Fed.Cl. at 131; *Cube Corp. v. United States,* 46 Fed.Cl. 368, 384 (2000); *ACRA, Inc. v. United States,* 44 Fed.Cl. 288, 295–96 (1999); *Labat–Anderson, Inc. v. United States,* 42 Fed.Cl. 806, 835 (1999) ("[A]gencies are not obligated to conduct all-encompassing discussions, that is, to address in express detail all inferior or inadequate aspects of a proposal"). Rather, discussions need only address "areas of weakness." *SDS Intn'l v. United States,* 48 Fed.Cl. 759 (2001); *Dynacs,* 48 Fed.Cl. at 131.

■ It is undisputed that the Navy did not conduct discussions upon the Cost proposals submitted by either JWK or LTM, although discussions were conducted with both offerors upon their respective proposals in the Technical, Management and Past Performance areas. As discussed in detail in the April 13, 2001 Order, JWK has not provided the Court with any substantive information

or argument that would suggest that while the Navy considered JWK's Cost proposal to be acceptable, it somehow held serious concerns about the submission.

In support of its contention that it will likely be successful on the merits of its appeal, JWK suggests that the Court applied an incorrect legal standard in concluding that the Navy's determination was rational. JWK contends that the procuring agency's duty to conduct meaningful discussions has been "greatly expanded" pursuant to the "Federal Acquisition Regulation Part 15 Rewrite." Pl.'s Mot. at 3–4. JWK's argument is not persuasive and is inaccurate in its application of the most recent amendments to the regulations.

JWK cites *Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 114 (1st Cir. 1997), decided by the First Circuit Court of Appeals, apparently for the proposition that agencies engage in principled decision making. Beyond that proposition, which with the Court does not take issue, the facts and law interpreted in the *Associated Fisheries* case are completely inapposite to the facts of the matter presented to the Court.

In 1997, Congress implemented changes to the FAR which can be found, in part, in the current version of FAR 15.306 which directs the agency as to the proper conduct for meaningful discussions during a negotiated procurement. Notwithstanding JWK's assertions to the contrary, as discussed in detail in the Order dated April 13, 2001, there is no support for JWK's contention that that provision "greatly expanded" the requirement for discussions beyond that found in the current case law. Moreover, each of the cases cited in the April 13, 2001 Order interpreted the FAR provision directing the agency with regard to the proper conduct for undertaking meaningful discussions as it was rewritten in 1997. Accordingly, JWK has failed to demonstrate that the April 13, 2001 Order incorrectly interpreted the law regarding the agency's duty to conduct meaningful discussions.

JWK's second argument in support of its position that it is likely to be successful on its appeal is that the Court misinterpreted the facts when it determined that the government did not have a duty to construe JWK's cost proposal as including a cost cap where the proposal did not expressly state its willingness to accept such a restriction. As discussed in the April 13, 2001 Order, had a cost cap been expressed in the proposal and the agency failed to conduct discussions, there might have been grounds for a determination that the Navy failed to conduct meaningful discussions. *See, e.g., Serv–Air, Inc.; Kay and Assoc. Inc.*, B–258342, B–258243.2, B–258243.3, 96–1 CPD ¶ 267 (Comp.Gen. Dec. 28, 1994).

Plaintiff contends, for the first time in this litigation, that the Navy, and now the Court, overlooked statements in JWK's Cost Proposal that suggested a willingness to accept a cost cap. Specifically, JWK asserts, without citation to the administrative record, that in its proposal plaintiff implied that it would absorb costs above the 1.5% escalation rate proposed by JWK. The paragraph that JWK apparently cites specifically states:

> Over the last nine years inflation has averaged a rate of 2.8%. At JWK, we have observed a condition that causes the average labor category wage rate increase to historically be less than the CPI inflation rate. This condition is normally the result of several factors such as: (1) employee promotions to higher paying positions within the company, (2) employees terminating employment, (3) employees in positions where labor cost [sic] are fixed (i.e. DOL), and (4) new employees hired to fill a requirement or an empty position at a lower rate than the rate at which the original employee who left that position was being paid. These factors have historically lowered the rate of inflation to between 1 to 1.5% less than inflation. Therefore, we feel that a rate of 1.5 percent is reasonable for this effort. This shows our concern for cost growth and [sic] while taking into account true impact of inflation as it relates to labor cost as discussed above.

AR 1153.

Notwithstanding JWK's assertion to the contrary, JWK's proposal cannot rationally be interpreted as being indicative of a willingness to accept a cost cap. There is no

basis for JWK's assertion that the Navy might have presumed that JWK intended to absorb actual direct labor cost increases above 1.5% through the mechanism of a cap on annual labor rate increases. As discussed in the April 13, 2001 Order, Offerors for this Solicitation were explicitly advised that "if a corporate policy has been made to absorb a portion of the estimated cost, that should be stated in the proposal." AR 157. Moreover, there was no guarantee that the Navy would engage in discussions. The Solicitation expressly stated that "the Government may award a contract under each LOT on the basis of initial offers received *without discussions*." AR 289 (emphasis added). It is clear that the government sought initial proposals which "contain[ed] the Offeror's best terms from a cost or price and technical standpoint." *Id.* As stated in the April 13, 2001 Order, if JWK intended to include a cost cap in its proposal it should have been expressly included in the initial proposal.

Finally, JWK asserts without explanation that "[i]t is this Court's duty to review the choice actually made, not a choice that could have been made." Pl.'s Mot. at 6. It is unclear what JWK intends by this statement. However, there is no basis for finding that the Court reviewed anything other than the decision by the Navy not to conduct discussions upon the Cost proposal. Moreover, the Navy's decision was found to be rational.

It is considered that JWK has not demonstrated a strong likelihood of success upon the merits of its appeal. Plaintiff has not provided any substantive argument or evidence that demonstrates error(s) in the April 13, 2001 Order. Plaintiff has failed to demonstrate a likelihood that it will prevail upon the merits in this appeal. There remain three factors to consider in the applicable balancing test. *See Standard Havens Prods.*, 897 F.2d at 513.

## 2. Likelihood that Movant Will Suffer Irreparable Harm

The question of whether JWK will suffer irreparable injury if the stay is not granted is arguable. Plaintiff asserts that in the absence of continued suspension of performance, JWK's workforce will likely resign their positions and take up new employment with LTM or one of its teaming partners. Pl.'s Mot. at 7.[4] Accordingly, it is asserted that were JWK to prevail upon its appeal of this Court's decision, it would not be able to readily compete should the solicitation be reopened for another round of competition. Pl.'s Mot. at 7.

Essentially JWK contends that unless performance is enjoined, plaintiff will be denied the opportunity to compete for the award. In considering cases involving the four factor analysis for a temporary restraining order pending judicial review, loss of an opportunity to compete for or obtain a Government contract has generally been found to constitute irreparable injury. *Magnavox Elec. Sys. Co. v. United States*, 26 Cl.Ct. 1373, 1379 (1992); *TRW Envtl. Safety Sys., Inc. v. United States*, 16 Cl.Ct. 520, 529 (1989). In this instance however, JWK seeks an injunction pending appeal *after* judicial review. Clearly JWK has already had an opportunity to compete for the contract and was not successful. Accordingly, a substantial amount of work previously performed by JWK will now be performed by another contractor. It is considered that in this circumstance there may be some merit to JWK's argument that it is in danger of losing personnel. However, it is clear that the crux of plaintiff's argument is not a loss of the opportunity to compete for the contract, but rather an assertion that it should have won the contract. Winning the contract at this juncture is contingent upon convincing the Appellate Court that the matter was wrongly decided on the merits. As discussed above, it is considered unlikely that JWK will prevail on the merits.

Furthermore, assuming its personnel did leave and take up employment with LTM, it is not at all clear from JWK's submissions that those employees would not be inclined to

---

4. Plaintiff asserts that this position is supported by a Declaration from JWK's Vice President and General Manager. That Declaration has not been provided to the Court, however, it is considered that even if it had been submitted, it would have little potential to impact upon this Court's decision.

return to JWK, if JWK were ultimately successful in upsetting the contract award. Although JWK makes the unsupported assertion that the cost of living is 24% lower and that the best value of this contract lies in hiring the offeror with educated and experienced service personnel, it is considered that JWK has the same opportunities to attract experienced employees from the pool of eligible personnel in the area as does LTM. Notwithstanding JWK's assertions to the contrary, there is little, if any, support for JWK's assertion that a denial of the stay will result in irreparable injury.

### 3. Likelihood of Harm to Interested Parties

With regard to the likelihood that substantial harm might be inflicted upon other interested parties if the stay were granted, JWK contends that the government assertion that it will lose funds should the stay continue does not justify the Navy's decision to enter into a contract without providing for full and open competition. FAR 6.301(c)(2). That provision specifically states:

> Contracting without providing for full and open competition shall not be justified on the basis of . . . (2) concerns related to the amount of funds available (e.g. funds will expire) to the agency or activity for the acquisition of supplies or services.

48 C.F.R. § 6.301(c).

Beyond JWK's own conclusory allegations, plaintiff has not asserted that the Navy has conducted this procurement without providing for full and open competition.

JWK does not offer any evidence or argument to support the proposition that granting the stay would avoid substantial harm to the other interested parties. The contract was originally scheduled for award in December 2000. AR at 63; 66. As JWK correctly states, performance has been voluntarily delayed by nearly four months as a result of this litigation. LTM and the government are ready to begin performance. It is considered that regardless of whether loss of funding would result from further delay of performance, such inactivity would, at the very least, result in degradation of the planning and preparation costs already expended in anticipation of commencement of performance by LTM. Accordingly, JWK has presented inadequate evidence that the granting of the instant stay would not result in substantial harm to other interested parties.

### 4. The Public Interest

Finally JWK asserts that the public interests which might be served should a stay be granted generally include an expectation of confidence in the procurement laws and the right of disappointed offerors to have their grievances heard in Court. Pl.'s Mot. at 8. Furthermore, JWK implies that the taxpayers have an interest in obtaining the benefit of a low bidder's services on a competitively bid contract. Pl.'s Mot. at 9.

Plaintiff correctly states that the public has an interest both in retaining the opportunity to air grievances in Court as well as in the fair and open competition afforded under the procurement laws. JWK has already had the opportunity to ventilate its grievances in Court while performance of the contract by the winning offeror was deferred. No violation of any procurement law or regulation which might protect offerors upon government contracts was found to exist. *See* Order dated April 13, 2001. There is a concurrent public interest in obtaining the speedy resolution of matters brought before the Court and the efficient use of limited judicial resources. RCFC 1.

There is also a substantial public interest in allowing the government to proceed with contracts awarded, in a manner consistent with fair and open competition, to the contractor offering the best value. The Court has examined the procurement at issue in this case and found it to have been properly conducted. If the Court were to delay the performance of this contract the only party to benefit would likely be the incumbent contractor, JWK. "There is . . . a considerable reluctance in granting an injunction pending appeal, when to do so, in effect, is to give the appellant the ultimate relief he is seeking." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice And Procedure § 2904, at 513 (2d ed.1995). Notwithstanding JWK's vehement assertion

to the contrary, it is concluded that the public interest would be most favored by allowing performance of the instant contract by the offeror selected by the government without judicially imposed disruption.

## CONCLUSION

It is considered that balancing all four factors, the scale tips heavily in favor of denial of JWK's motion for an injunction pending appeal of this matter. The public interest and potential harm to be suffered by LTM and the government is only slightly offset by JWK's potential loss of personnel. Moreover, JWK has clearly failed to establish a likelihood of success on the merits of its appeal. In situations in which the Court finds "there exists only a modicum of relative harm and little uncertainty of final disposition" it is appropriate to deny a motion for a stay of judgment pending appeal. *Golden Eagle Refining Co.*, 4 Cl.Ct. at 625.

Accordingly, it is **ORDERED** that plaintiff's Motion for an Injunction Pending Appeal, pursuant to RCFC 62(c) is **DENIED.**