ALASKA CENTRAL EXPRESS,
INC., Plaintiff,

v.

**THE UNITED STATES, Defendant,**

and

**Northern Air Cargo, Inc., Intervenor.**

No. 01–401C.

United States Court of Federal Claims.

Dec. 11, 2001.

Robert P. Silverberg, Washington, DC, for plaintiff.

F. Jefferson Hughes, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Michael Mumbach, United States Postal Service, of counsel.

Scott T. Kragie, Washington, DC, for intervenor.

## ORDER

MILLER, Judge.

On November 21, 2001, plaintiff filed Plaintiff's Motion To Maintain Preliminary Injunction Pending Appeal. Pursuant to the order entered on November 27, 2001, defendant responded on November 30, 2001, intervenor's response was filed by leave on December 3, 2001, and plaintiff replied on December 5, 2001.

As a threshold matter, despite the title of plaintiff's motion, no preliminary injunction is present to maintain, although the court does have the power to issue a separate injunction on identical terms. The court's power to enforce its July 17, 2001 order memorializing the parties' agreement to maintain the status quo terminated when the court determined

that it lacked subject matter jurisdiction over this case.[1] The court does retain certain limited powers given to it under the rules to correct clerical errors and aid the resolution of post-judgment proceedings. In particular, RCFC 62(c) provides:

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the Court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as is considered proper for the security of rights of the adverse party.

Plaintiff's request is therefore proper, although the court treats the relief sought as praying for issuance of an injunction pending appeal.

▪▪▪ An injunction pending appeal, like a stay pending appeal, is an "extraordinary remedy." *Golden Eagle Ref. Co. v. United States,* 4 Cl.Ct. 622, 624 (1984) (quoting *Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Employees v. Nat'l Mediation Bd.,* 374 F.2d 269, 275 (D.C.Cir.1966)). When considering such a motion under RCFC 62(c), the court is guided by the Federal Circuit's jurisprudence under FED. R. APP. P. 8(a) and assesses the movant's chances for success on appeal and weighs the equities as they affect the parties and the public. *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *JWK Int'l Corp. v. United States,* 49 Fed.Cl. 364, 366 (2001); cf. *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,* 835 F.2d 277, 278 (Fed.Cir.1987) (motion for injunction pending appeal in patent case). The court considers four factors: (1) whether the movant has made a strong showing that he is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Standard Havens Prods. v. Gencor Indus.,* 897 F.2d 511, 512 (Fed.Cir.1990) (quoting *Hilton,* 481 U.S. at 776, 107 S.Ct. 2113). The court need not give each factor equal weight, and the likelihood of success on the merits is not a *rigid* concept. *Id.*

### 1. *Likelihood of success*

The court's October 19, 2001 opinion concluded that plaintiff did not satisfy the unqualified and unequivocal definition of "interested party" announced by the Federal Circuit in *AFGE v. United States,* 258 F.3d 1294, 1302 (Fed.Cir.2001). Although the bid protest jurisdiction of the Court of Federal Claims has a "long and complicated" history, *Emery Worldwide Airlines, Inc. v. United States,* 264 F.3d 1071, 1078 (Fed.Cir.2001), construction of subsection (b) of the Tucker Act, 28 U.S.C. § 1491 (1994 & Supp. V 1999), is still in its nascency. *AFGE* is one of three decisions delimiting the reach of this jurisdiction. *See Emery,* 264 F.3d at 1080–85; *RAMCOR Servs. Group, Inc. v. United States,* 185 F.3d 1286, 1289 (Fed.Cir. 1999).

*AFGE* resolved any ambiguity in the term "interested party" by interpreting that term consistent with the Competition in Contracting Act (the "CICA"), 31 U.S.C. § 3551(2) (1994 & Supp. V 1999). 258 F.3d at 1302. Plaintiff does not argue that it meets the standing requirements of the CICA. Instead,

1. *See* Order entered Nov. 16, 2001, at 2. Plaintiff had moved for a preliminary injunction at the outset of this case. At a July 17, 2001 hearing on plaintiff's motion, defendant represented that the United States and the United States Postal Service (the "USPS") had agreed to maintain the status quo in lieu of a preliminary injunction. Plaintiff submitted a draft order to the court instructing the USPS to "continue tendering all categories of bush and mainline mail to [plaintiff] during the pendency of this action in approximately the same proportionate amounts as immediately before the [USPS] letter of June 25, 2001 proposing to discontinue tender of mail to [p]laintiff." On July 17 the court issued an order incorporating the above language. Plaintiff's insistence that the language "during the pendency of this action" contemplates continuance of the status quo during appeal is irrelevant in light of the court's conclusion that it lacked jurisdiction over this case. In any event, although plaintiff cites cases discussing a number of other statutory schemes that consider a case to be "pending" while on appeal, it is this court's view that the Government's forbearance from taking action during the pendency of an action before the trial court does not signify agreement to maintain the status quo beyond the date that the trial court enters judgment.

plaintiff argues that *AFGE* did not mean to incorporate the formal competition requirements of the CICA into the Tucker Act. As this court noted in its October 19 opinion, "plaintiff necessarily argues that the Federal Circuit did not mean what it said in *AFGE*." The court determined that *AFGE* cannot support such a reading. Without some qualification from the Federal Circuit, *AFGE* instructs this court to

> construe the term "interested party" in § 149(b)(1) in accordance with the CICA, and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract.

258 F.3d at 1302. Furthermore, any residual ambiguity after *AFGE* must still be resolved against an expansion of jurisdiction. *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951) ("[S]tatutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign."); *AFGE*, 258 F.3d at 1301.[2]

■ If the court considered that plaintiff would succeed on the merits, it would not have ruled against plaintiff in the first place, straining the analogy to Fed. R. App. P. 8(a). The court has already declined to reconsider its decision once. *See* Order entered Nov.

16, 2001. The fluid requirements of Fed. R. App. P. 8(a), however, allow an injunction " 'where [the movant] establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a *substantial case* on the merits,' *provided* the other factors militate in movant's favor." *Standard Havens*, 897 F.2d at 512 (quoting *Hilton*, 481 U.S. at 778, 107 S.Ct. 2113). "When harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.' " *Id.* Accordingly, if the equities weigh heavily in favor of maintaining the status quo, this court may grant an injunction under RCFC 62(c) where the question raised is novel or close, especially when the case will be returned to the trial court should the movant succeed. *See id.* at 513 ("[I]f the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation ...."); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C.Cir.1977) (discussing "the movement in other courts away from a standard incorporating a wooden 'probability' requirement and toward an analysis under which the necessary showing on the merits is governed by the balance of equities as revealed through an examination of the other three factors").

---

**2.** Plaintiff also argues that this action presents an equally close question of when a case is ripe for adjudication under section 1491(a) of the Tucker Act. Plaintiff's original complaint alleged jurisdiction under both sections 1491(a) and 1491(b). The complaint, however, did not allege the existence of an express or implied contract with the United States or the violation of a money-mandating statute or regulation, and the court therefore found jurisdiction lacking under section 1491(a). Plaintiff sought leave to amend its complaint to allege a breach of contract or the violation of a money-mandating statute or regulation. Defendant represented that the parties had maintained the status quo during the pendency of plaintiff's request for reconsideration. Because no breach or violation had occurred, no substantive right to money damages had accrued, and leave to amend the complaint was denied as futile.

Plaintiff does not question this application of the court's Tucker Act jurisprudence. Instead,

plaintiff argues that the traditional requirement of actual and due money damages is qualified by the court's jurisdiction over CDA cases under section 1491(a)(2). Plaintiff's argument that this is a CDA case is strained, at best. The court reiterates its conclusion that plaintiff's delivery of mainline nonpriority bypass mail is contractual. *See Bay View, Inc. v. United States*, 278 F.3d 1259, 1265 (Fed.Cir.2001) ("Any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government ...."). Not all contracts with the Government, however, are subject to the CDA, and plaintiff has made nothing more than a superficial attempt to fit this case within that statutory scheme. Indeed, the absence of competition in the distribution of the mails in Alaska militates against application of the CDA to any contract that may exist. *See Institut Pasteur v. United States*, 814 F.2d 624, 626–27 (Fed.Cir.1987); *G.E. Boggs & Assoc. v. Roskens*, 969 F.2d 1023, 1026 (Fed.Cir.1992).

## 2. *Irreparable injury to plaintiff*

Plaintiff submits that a denial of the opportunity to continue contracting for the transport of mainline nonpriority bypass mail will result in an immediate, irrecoverable loss of 62 percent of its revenues, thereby jeopardizing the continued employment of plaintiff's staff.[3] Neither defendant nor intervenor challenges this figure.

Defendant and intervenor do dispute the logical connection between the fact that mainline bypass mail comprises a majority of plaintiff's revenues and the conclusion that bankruptcy will necessitate absent an injunction. Pointing out that plaintiff has not shown that it could not shift its operations to the bush market without suffering a severe economic loss, defendant suggests that plaintiff, as a bush carrier, has opportunities in bush markets that are foreclosed to mainline carriers. Defendant questions plaintiff's failure to explain why its bush aircraft cannot be profitably flown on these bush routes, particularly in light of the higher bush rate paid on these routes.

■ While the court does not accept bald assertions of harm, it is reluctant to surmise that plaintiff would have committed the time and resources it has to this case were it able to operate at a relative profit on bush routes. Contrary to intervenor's assertion, plaintiff does not allege the sort of simple economic harm that has been found insufficient to warrant a stay. *See Standard Havens*, 897 F.2d at 516 (granting stay where "reasonably expected harm would be both catastrophic and irreparable" such that appellant "may well cease to exist"); *Wash. Metro.*, 559 F.2d at 843 n. 2 (acknowledging that "destruction of a business is, of course, an essentially economic injury," but distinguishing it from "mere" economic injuries such as "the necessary expenditure of funds pending appeal and the temporary monetary losses for which adequate compensatory or other corrective relief will be available at a later date"). More fundamentally, loss of the opportunity to compete for or obtain a government contract, as opposed to loss of the award of the contract, generally constitutes irreparable injury. *JWK*, 49 Fed.Cl. at 369; *Aerolease Long Beach v. United States*, 31 Fed.Cl. 342, 374 (1994). The same reasoning applies, although no competition is held, where plaintiff is denied consideration for an entire class of contracting.

Defendant also argues that plaintiff has for some time now been on notice of the USPS's intention to reverse its equalization policy and therefore has had ample opportunity to alter its business model. This statement presumes that a comparable alternative model exists. The court accepts the business judgment of plaintiff's General Manager Michael Bergt, expressed in his November 19, 2001 and December 4, 2001 declarations, as well as by his decision to pursue this litigation in the first place.

## 3. *Substantial injury to other parties*

Plaintiff argues that no substantial harm will result from the issuance of an injunction pending appeal because such an injunction would simply continue the relationship that has existed between plaintiff and the USPS for over a decade. Intervenor, on the other hand, has maintained from the outset that it has a direct economic interest in this case. "Insofar as [plaintiff] may be deemed a 'disappointed bidder' with respect to future mail business, [intervenor] would be a 'successful bidder' with respect to its proportionate share of such business." Intvr's Br. filed Aug. 20, 2001, ¶ 5. Intervenor cited defendant's agreement to maintain the status quo that was embodied in the July 17 order as evidence that the Department of Justice did not adequately represent its interests.[4]

For the same reasons that the court defers to the professional judgment of Mr. Bergt regarding plaintiff's business model, it does not accept his criticism of intervenor's model. The court does not doubt that, should the

---

3. The various categories of mail delivered by private carriers in Alaska and the rates paid by USPS are discussed in the court's October 19 opinion. *Ala. Cent. Express, Inc. v. United States*, 50 Fed.Cl. 510, 511–12 (2001).

4. Counsel for intervenor was present at the July 17 hearing, but represented that intervenor had not decided whether to attempt to enter the case at that time.

USPS discontinue tender of mainline mail to plaintiff, intervenor's share of Alaskan mainline mail would increase as a result. Moreover, as the court understands that intervenor's costs are primarily fixed, an increase in the mail tendered to intervenor would be recognized immediately as increased revenue.

"Relief saving one claimant from irreparable injury, at the expense of similar harm caused another, might not qualify as the equitable judgment that a stay represents." *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C.Cir.1958). Although the additional revenue that would accrue to mainline carriers from a proportionate increase in their mail does not outweigh the halving of plaintiff's revenues that would result from its exclusion from the mainline market, consideration of this third factor tilts the balance of hardships away from where it would otherwise lie if the second factor were considered alone.

4.  *Public interest*

The final factor moves this balance beyond the margins of the court's discretion under RCFC 62(c). J. Michael Kropp, the USPS's manager of commercial air operations, persuasively explained that the continued tender of mainline mail to bush carriers such as plaintiff drives up the mainline rate and increases the USPS's deficit for Alaska operations. The mainline rate is calculated according to mainline carriers' costs. The presence of equalized bush carriers in the mainline market, and the corresponding reduction in mail tendered to mainline carriers, causes mainline carriers to operate at less efficient levels. Because less mail is transported at essentially the same fixed costs, the cost relative to the amount of mail tendered to mainline carriers is higher than it would be absent the presence of bush carriers on mainline routes. The court accepts Mr. Kropp's conclusion that continued tender of mainline mail to plaintiff would prevent the USPS from exploiting the economies of scale enjoyed by mainline carriers.

The only contrary public interest relied on by plaintiff is an interest in the resolution of this case on the merits. This interest, however, is inextricably tied to the court's opinion regarding jurisdiction. Because the court concludes that it lacks jurisdiction over this case, the court finds that any interest in resolution of the merits would not be served by an injunction.

To summarize, the court makes the following calculus: (1) this case follows clear, yet recent and evolving precedent; (2) the harm to plaintiff without an order would be irreparable and (3) outweighs the harm that would befall intervenor and other mainline Alaskan carriers; but (4) an injunction would aggravate the efficiency of mainline carriers, compromising the public interest in lower mainline rates.

The court is sympathetic to plaintiff whose interests have been represented zealously, yet with courtesy to the court. The lynchpin of the requested injunction, however, would be this court's speculation about the construction of *AFGE* on review. That would be improper. Pursuant to FED. R. APP. P. 8(a), plaintiff has an opportunity to request an injunction directly from the Federal Circuit. Should the Federal Circuit conclude that it will likely revisit *AFGE*, it may not require the balance of harms to weigh so heavily in plaintiff's favor. Accordingly,

**IT IS ORDERED,** as follows:

Plaintiff's motion for an injunction pending appeal is denied.