TIVO INC., Plaintiff,

v.

ECHOSTAR COMMUNICATIONS
CORP., et al. Defendants.

No. 2:04 CV 1 DF.

United States District Court,
E.D. Texas,
Marshall Division.

Aug. 17, 2006.

Alexander C.D. Giza, Andrei Iancu, Adam S. Hoffman, Christine W.S. Byrd, Morgan Chu, Perry M. Goldberg, Richard E. Lyon, Irell & Manella, Los Angeles, CA, Samuel Franklin Baxter, Attorney at Law, Marshall, TX, Ben Yorks, Brian Jones, Michelle Armond, Irell & Manella, Newport Beach, CA, R. Scott Feldmann, Randall I. Erickson, Steven P. Rice, Van V. Nguyen, Crowell & Moring, Irvine, CA, Garret Wesley Chambers, McKool Smith, Dallas, TX, for Plaintiff.

Alison M. Tucher, Jason A. Crotty, Rachel Krevans, Robert M. Harkins, Jr., Harold J. McElhinny, Kristina Paszek, Morrison & Foerster LLP, San Francisco, CA, Karl J. Kramer, Emily A. Evans, Morrison & Foerster, Palo Alto, CA, Damon Michael Young, John Michael Pickett, Young Pickett & Lee, Texarkana, TX, for Defendants.

### ORDER

FOLSOM, District Judge.

Before the Court is Plaintiff TiVo's Motion for Entry of Judgment and Permanent Injunction. Dkt. No. 733. Also before the Court is Defendants' (1) Opposition to TiVo's Motion for Entry of Judgment and Permanent Injunction and (2) Cross–Motion to Stay Any Injunction Pending Appeal, TiVo's (1) Reply Re: Motion for Entry of Judgment and Permanent Injunction and (2) Opposition to EchoStar's Cross–Motion to Stay Injunction, and Defendants' Reply in Support of Cross–Motion to Stay Any Injunction Pending Appeal. Dkt. Nos. 737, 747, 754,

respectively. On June 28, 2006 the Court heard the parties on these motions. Having considered the motions, all other relevant briefing, and the applicable law, the Court finds that Plaintiff's Motion for Injunction should be **GRANTED** and Defendants' Motion to Stay Any Injunction Pending Appeal should be **DENIED**.

### I. BACKGROUND

In this patent infringement action, Plaintiff claimed a number of Defendants' digital video recorders [1] ("DVRs") infringe several claims in Plaintiff's U.S. Patent No. 6,233,389 (the "'389 patent"). In March 2006–April 2006, the case was tried to a jury. The jury found that Defendants' accused DVRs infringed each of the asserted claims and further found that Defendants' infringement was willful. None of the asserted claims was found invalid. The jury awarded Plaintiff $73,991,964 million in compensatory damages.

Plaintiff now moves for entry of a permanent injunction. Defendants oppose any injunction and, alternatively, move to stay any injunction.

### II. LEGAL PRINCIPLES

Recently the Supreme Court revisited the propriety of issuing permanent injunctions as a matter of course after a finding of infringement in patent cases. *eBay Inc. v. MercExchange, L.L.C.,* — U.S. —, — — —, 126 S.Ct. 1837, 1839–1841, 164 L.Ed.2d 641 (U.S.2006)(hereinafter "*eBay*"). Observing the existence of a " 'general rule,' unique to patent disputes" that mandated the issuance of a permanent injunction once infringement and validity were decided, the Supreme Court explored the origins of this general rule and compared it to other instances in

---

**1.** The following of Defendants' DVR receivers were found to infringe: DP–501; DP–508; DP–510; DP–522; DP–625; DP–721; DP–921; and the DP–942.

which courts are faced with deciding whether or not to issue equitable relief. *Id.* The Supreme Court determined that equitable relief is not mandatory in patent cases, but instead should be decided in accordance with traditional equitable considerations. *Id.*

■ To this end, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:

A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* Further, the Supreme Court held that:

[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.

*Id.* It is clear that the Supreme Court by its decision did not intend to part with long-standing decisions in equity. As noted by Chief Justice Roberts, "there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate." *Id.* at 1841 (Roberts, C.J.concurring). And, as Justice Kennedy notes in his concurrence, "the existence of a right to exclude does not dictate the remedy for a violation of that right," which aligns equitable decisions in patent cases with other cases. *Id.* at 1842 (Kennedy, J. concurring).

■ "Once a plaintiff has met its burden in showing that an injunction is necessary, no delay in the issuance of that injunction is appropriate absent extraordinary circumstances." *Boehringer Ingelheim Vetmedica, Inc. v. Schering–Plough Corp.,* 106 F.Supp.2d 696, 708 (D.N.J.2000)(internal quotation and citation omitted). In determining whether a stay is appropriate, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Standard Havens Prods. v. Gencor Indus., Inc.,* 897 F.2d 511, 512 (Fed.Cir. 1990). Each factor is not necessarily entitled to equal weight; a stay is discretionary with the Court.

### III. THE PARTIES' POSITIONS

Plaintiff argues that each of the four equitable factors "overwhelmingly weigh[s] in favor of enjoining EchoStar's continuing infringement." Dkt. No. 733 at 7.

Regarding the first and second factors, Plaintiff argues that because it is in direct competition with Defendants, their infringement has "direct, severe consequences" on its ability to compete. *Id.* According to TiVo, Defendants specifically target potential TiVo customers and Defendants' competition leads to Plaintiff's loss of critical market share. *Id.* TiVo argues that loss of customers and loss of market share are irreparable injuries that cannot be recouped though monetary awards. *Id.* at 8. Without an immediate injunction, Plaintiff argues, "new DVR customers on the EchoStar platform will likely adopt EchoStar's competing devices instead of TiVo's." According to TiVo,

"[t]hese customers are lost, probably for good." *Id.* at 8. TiVo cites evidence that customers tend to stay with their current DVR service providers, i.e. that they are "sticky customers." *Id.*

Plaintiff also argues that, because the DVR market is in its "formative years and is currently growing at exponential rates," Plaintiff risks being marginalized due to Defendants' infringement by the time the market matures. *Id.* at 9. Such marginalization, Plaintiff argues, has been expressly recognized as a type of irreparable harm. *Id.*

Plaintiff further argues that it suffers irreparable harm from price erosion resulting from Defendants' offering the infringing products and service at "less than full value." *Id.* at 9–10. Plaintiff also argued Defendants' infringement has resulted in "value erosion" as potential business partners are reluctant to enter into agreements for the technology Defendants utilize for free. *Id.* at 10. Lastly, Plaintiff argues that Defendants' infringement causes irreparable harm insofar as it encumbers Plaintiff's ability to invest in its business and in additional research and development. *Id.* at 10.

Only an injunction, Plaintiff argues, can remedy the irreparable harm caused by Defendants' infringement. Without an injunction, Plaintiff argues it will lose market share, which is particularly important during the formative years of a market. *Id.* at 11. Such harms, Plaintiff argues, cannot be remedied with monetary damages. Plaintiff also argues that, absent an injunction, ongoing harm to its brand, reputation and good will cannot be remedied. *Id.* And, in the absence of an injunction, Plaintiff argues it will be unfairly forced into a compulsory license. Dkt. No. 747 at 6.

Addressing the third factor, Plaintiff argues that the balance of hardships weighs heavily in favor of enjoining Defendants' infringement. *Id.* at 12. Plaintiff argues that, because of its size and its dependence on its DVR technology, it will become extinct if it cannot exploit its technology in the market. *Id.* By contrast, Plaintiff argues that the EchoStar corporation is a multi-billion-dollar corporation whose primary business is providing satellite television signals. *Id.* Enjoining EchoStar's infringing DVRs will not affect its satellite transmissions, Plaintiff argues. *Id.* Thus, according to Plaintiffs, "an injunction causes EchoStar no hardship that is properly considered in this balancing." *Id.* Plaintiff further argues that, because Defendants' infringement is willful, it cannot complain of hardship. *Id.*

Regarding the public interest, Plaintiff argues that no interest would be served by allowing Defendants' infringement to continue. *Id.* at 13. To the contrary, Plaintiff argues that the public's interest in patent rights and the patent system would be served by enjoining Defendants' infringement. *Id.*

Plaintiff argues, anticipating Defendants will request a stay of any injunction, that the four factors for determining whether a stay is appropriate each weigh against a stay in this case. *Id.* at 16.

Lastly, Plaintiff addresses the specifics of the injunction they seek. Plaintiff requests that Defendants be immediately enjoined from "making, using, selling, offering for sale, and/or importing into the United States all of its infringing DVR products . . ." including not only the accused products but also products that are not more than colorably different. 6/28/06 Hr. Tr. at 146:11–18; Dkt. No. 733 at 19 (internal citation omitted). The injunction must extend, Plaintiff argues, to "new placements" (newly sold DVRs) as well as "existing placements" (DVRs already

placed with customers). Dkt. No. 733 at 20–21.

In response, Defendants argue Plaintiff faces no irreparable harm absent a permanent injunction. Dkt. No. 737 at 7. According to Defendants, Plaintiff's delay in bringing this lawsuit weighs against an injunction. *Id.* at 8. Defendants also charge that Plaintiff's motive in this lawsuit was only to "give TiVo additional leverage to force EchoStar and TiVo's other prospective business partners to make more favorable deals with TiVo." *Id.* Thus, Defendants argue, it is not reasonable to conclude Plaintiff will be irreparably harmed if Defendants are "allowed to continue providing DVRs to [their] own subscribers." *Id.* at 8.

Defendants cite Plaintiff's "failure to seek a preliminary injunction" as further evidence Plaintiff faces no irreparable harm. *Id.* Defendants then argue that Plaintiff stands to reap more money for its infringement than Plaintiff would make if Defendants were enjoined because, according to Defendants, Plaintiff could not have provided enough DVRs to its customers to accrue the "windfall" awarded by the jury. *Id.* at 8–9.

Defendants also argue that because the DVR market is not a two-player market, Plaintiff's arguments rest on a fallacy. *Id.* at 9. Defendants also cast Plaintiff's price erosion concerns as "mak[ing] little sense." *Id.* And, Defendants argue, Plaintiff's evidence of commercial success while the infringing products have been on the market demonstrate that Plaintiff will not suffer irreparable harm. *Id.* at 10.

According to Defendants, monetary damages will fully compensate Plaintiff for all of the existing placements of infringing DVRs. *Id.* at 10. Defendants argue that Plaintiff's counsel at trial represented that injunctive relief would only apply to new DVR placements. *Id.* at 11 citing trial transcript. This, according to Defendants, amounted to an admission that monetary relief is an adequate remedy for existing placements. *Id.* Defendants then argue that the same rate of compensation for the existing placements must also be adequate for any future placements. *Id.* And, based on Plaintiff's counsel's representation, Defendants argue that Plaintiff cannot now seek an injunction on existing placements. *Id.*

Defendants argue that the public interest would not be served by an injunction. *Id.* at 12. According to Defendants, the injunction Plaintiff proposes "would immediately remove DVRs from three million families who are innocent of any wrongdoing... [depriving] those families of DVRs and force[ing] them to incur significant disruption and expense in order to replace them." *Id.* at 12. Defendants argue this is contrary to the public interest. *Id.* Denying an injunction, however, does "not harm the public interest in maintaining the integrity of the patent system" and, according to Defendants, will still leave Plaintiff in a better position than if Defendants had not infringed or if Defendants engaged in a business relationship with Plaintiff. *Id.* at 12–13.

Lastly, Defendants argue that the balance of hardships weighs against an injunction. *Id.* at 13. According to Defendants, Plaintiff faces no hardship if an injunction does not issue because monetary relief provides an adequate remedy at law. *Id.* However, Defendants argue, an injunction will cause them "severe and irremediable" harm. *Id.*

Defendants argue that enjoining their DVR sales will impact its ability to compete in the market for subscribers, leading to a "high risk of losing a significant percentage of existing subscribers, and... significantly impair[ing] [their] attracting

new subscribers." *Id.* at 14. Defendant argues that small authorized distributors will also be severely impacted. *Id.*

Regarding the form of an injunction, Defendants argue only new placements should be enjoined because, at trial, Plaintiff's counsel represented that Plaintiff would seek only to enjoin new placements. *Id.* at 15–16. Now, Defendant argues, Plaintiff is bound to this limitation on injunctive relief. *Id.* Defendants also argue that because their DVRs have substantial non-infringing uses, Plaintiff's requested injunction is "improperly broad." *Id.* at 16. And, Defendants argue, the injunction should not extend to DVRs already distributed but not placed because they cannot infringe until the infringing software is downloaded. *Id.* at 17. Lastly, Defendants argue the injunction should extend only to the specific devices for which the jury found infringement. *Id.* at 17.

Should an injunction issue, Defendants argue a stay is warranted. Defendants argue that it is likely to prevail on its appeal of the infringement verdict. *Id.* at 19. Defendants list a number of claim construction and evidentiary rulings that they plan to appeal. *Id.* at 19–29. Largely reciting the same factors set forth in the discussion of the balance of hardships, Defendants argue they will be irreparably harmed absent a stay but that Plaintiff does not face such harm in the event of a stay. *Id.* at 29–31. Again, reciting many of the arguments set forth above, Defendant argue that the public interest warrants a stay. *Id.* at 32–33.

In reply, Plaintiff defends the form of injunction it requests. Plaintiff points out that Defendant does not dispute that it can turn off the DVR functionality of the already placed infringing DVRs. Dkt. No. 747 at 10. Plaintiff argues that its counsel did not represent that the injunctive relief Plaintiff would seek was as limited as Defendants argue; instead, Plaintiff's counsel represented only that no injunction would be pursued on the infringing units for which lost profit damages are received. *Id.* at 12.

Plaintiff also argues that a stay is not warranted because of the severe irreparable harm it faces in the interim. *Id.* at 12–13, 22–24. Further, because the jury found that Defendants willfully infringe, their alleged injury absent a stay is the result of their own deliberate doing. *Id.* at 13. Plaintiff addresses Defendants' list of appellate points and disputes that there is any reason to conclude that Defendant has a likelihood of success on any of its points. *Id.* at 13–22. Thus, Plaintiff argues, the present is not an exceptional case wherein a stay of injunctive relief is warranted.

In surreply, Defendants argue that the public interest in maintaining the status quo pending appeal favors entry of a stay. Dkt. No. 754 at 5–6.

## IV. DISCUSSION

### A. Permanent Injunction

 Following the traditional four-factor test for equitable relief, the Court concludes that a permanent injunction is warranted.

Plaintiff has demonstrated both that it continues to suffer irreparable harm in the absence of an injunction and that there is no adequate remedy at law. Defendants compete directly with Plaintiff—Defendants market their infringing products to potential DVR customers as an alternative to purchasing Plaintiff's DVRs. The availability of the infringing products leads to loss of market share for Plaintiff's products. Loss of market share in this nascent market is a key consideration in finding that Plaintiff suffers irreparable harm—Plaintiff is losing market share at a critical time in the market's development, market

share that it will not have the same opportunity to capture once the market matures.

One thing the parties agree on is that DVR customers are "sticky customers," that is they tend to remain customers of the company from which they obtain their first DVR. Dkt. No. 737 at 30 (EchoStar); Dkt. No. 747 at 1 (Tivo). Thus, the impact of Defendants' continued infringement is shaping the market to Plaintiff's disadvantage and results in long-term customer loss. This is particularly key where, as is the case here, Plaintiff's primary focus is on growing a customer base specifically around the product with which Defendants' infringing product competes. And, as Plaintiff is a relatively new company with only one primary product, loss of market share and of customer base as a result of infringement cause severe injury. Thus, the Court concludes that the full impact of Defendants' infringement cannot be remedied by monetary damages.

Plaintiff's "delay" in bringing this lawsuit, which Defendants argue demonstrates there is no irreparable injury, was due to Plaintiff's attempts to enter into a business arrangement with Defendants. *See* Dkt. No. \_\_\_, Findings of Fact and Conclusions of Law. It does not demonstrate that there is no irreparable harm. Plaintiff's motives in bringing the lawsuit are irrelevant—the jury found Plaintiff's patent valid and infringed by Defendants' DVRs. The Court also finds the statement by Plaintiff's counsel cited by Defendants does not amount to an admission that monetary relief is adequate.

The balance of hardships weighs in favor of granting a permanent injunction. As discussed, Plaintiff faces ongoing irreparable injury as Defendants' infringement continues. As a relatively new and small company, every day of Defendants' infringement affects Plaintiff's business. And, as discussed above, Plaintiff's primary product, its DVRs, are those with which Defendants' infringing products directly compete. The harm caused by such infringement weighs heavily in favor of an injunction.

Enjoining Defendants will likely cause some harm—but on balance, Defendants will endure less harm than Plaintiff. The infringing products do not form the core of Defendants' satellite transmission business. And the injunction will not interfere with Defendants' satellite transmission.

The hardship of disabling DVR capabilities to Defendants' DVR customers is a consequence of Defendants' infringement and does not weigh against an injunction. Defendants do not dispute that, with software updates transmitted directly to the infringing products, the DVR capabilities of the infringing products can be disabled. This process, though cumbersome, is not on balance a weighty hardship for Defendants. Similarly, any impact of the injunction on Defendant's authorized distributors is also a consequence of Defendants' infringement and does not weigh against an injunction. Again, distributors' sales of Defendants' core products will not be affected by the injunction.

Lastly, the public interest would not be disserved by a permanent injunction. The public has an interest in maintaining a strong patent system. This interest is served by enforcing an adequate remedy for patent infringement —— in this case, a permanent injunction. The infringing products are not related to any issue of public health or any other equally key interest; they are used for entertainment. The public does not have a greater interest in allowing Defendants' customers' to continue to use their infringing DVRs.

### B. Stay of a Permanent Injunction

A stay of the permanent injunction is not warranted.

Defendants' identification of issues and rulings it plans to appeal is lengthy. Upon review, it seems that the Court has previously considered each at length. Although Defendants may prevail on some of the issues, they have not demonstrated a strong likelihood of success on appeal that would overturn the jury's verdict on all infringed claims.

Defendants raise appellate points regarding the Court's claim construction, but identify only one term, "decoder," common to both the hardware and software claims. Defendants' argue the proper construction of the term would "mandate a finding of non-infringement." Dkt. No. 737 at 26; Dkt. No. 754 at 14. In the half-page Defendants devote to this term in their brief, Defendants do not detail their argument for overturning the construction of this term. Dkt. No. 737 at 25–26.

As far as the exclusion of certain evidence, Defendants do not demonstrate that reversals of either of the rulings they identify for appeal will lead to overturning the infringement verdict on each of the asserted claims. In particular, the exclusion of the Merchant & Gould opinion letters is primarily related to the jury's willfulness determination, and overturning this ruling may amount to a retrial on this issue alone.

Although the injunction will likely result in some degree of customer loss and will impact Defendants' ability to compete in the market, Defendants will not be irreparably harmed. Again, Defendants' core business is not the supply of DVRs. Defendants have not demonstrated that an injunction on the infringing products would have a severe financial impact on their core business or will lead to loss of employees. Defendants' authorized retailers will still be able to sell and service Defendants' non-infringing products. Conversely, absent a stay, Plaintiff faces ongoing irreparable injury as detailed above.

Lastly, Defendants' argument that the public interest in maintaining the status quo—allowing Defendants' current DVR customers and its retailers to continue business as usual—is served by granting a stay. Without a stronger showing that the jury's verdict will be overturned in its entirety on appeal, however, allowing the ongoing infringement is not within the public's interest.

## C. Form of the Injunction

The Court will issue an injunction explicitly subject to 28 U.S.C. § 1498 contemporaneously with this order and its final judgment.

## V. CONCLUSION

For all the above reasons, Plaintiff TiVo's Motion for Entry of Judgment and Permanent Injunction, Dkt. No. 733, is hereby **GRANTED** and Defendants' Cross–Motion to Stay Any Injunction Pending Appeal, Dkt. No. 737, is hereby **DENIED.**