KASOLD, Judge,
dissenting:
Today, the Court grants the Secretary’s request to issue three stay orders pending resolution of an appeal to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) of this Court’s decision in Haas v. Nicholson, 20 Vet.App. 257 (2006), appeal docketed, No.2007-7037 (Fed.Cir. Nov.8, 2006), to wit: (1) stay the effect of the Court’s decision in Haas, (2) stay the processing of an estimated 1,500 claims[11] potentially affected by Haas that are now on appeal at the Board, and (3) stay the processing of claims by an estimated 832,000 claimants and potential claimants that may be affected by the Haas decision. As discussed below, the only issue properly before the Court in this case is the Secretary’s request to stay the processing of the estimated 1,500 claims potentially affected by Haas that are now on appeal at the Board. A review of the merits of the Secretary’s other stay requests should be denied for prudential, if not jurisdictional, reasons. Moreover, because the Secretary utterly fails to demonstrate that a stay in the processing of claims on appeal to the Board that might be affected by Haas is warranted in this instance, his request should be denied. See Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 512 (Fed.Cir.1990) (burden on applicant to make necessary showings for grant of stay). I therefore respectfully dissent from the Court’s grant of the motion for a stay of proceedings below.
I. The Haas and Ribaudo Cases
Pertinent to any discussion of the Secretary’s request for the stay orders is an understanding of the Haas decision, the Court’s recent decision in Ribaudo, and the Secretary’s reaction to both. In Haas, the Court rejected a recent interpretation *156 by the Secretary of his regulations that, for purposes of affording the presumption of exposure to herbicides provided by statute and regulation, service in the Republic of Vietnam did not include those who served on naval ships off the coast of Vietnam even though they had been awarded the Vietnam Service Medal (VSM).[12] In rendering this holding, the Court noted the longstanding interpretation of the Secretary to the contrary, as expressed in the VA Adjudication Procedure Manual [hereinafter M21-1], the fact that this longstanding interpretation was not inconsistent with statute or regulation, and the fact that M21-1 provisions such as the one discussed in Haas had the force and effect of Department regulations. See Haas, 20 Vet.App. at 269-75. The Court further set aside changes in the M21-1 made in February 2002 because they were promulgated without notice and opportunity to comment, in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 553(a). See Haas, 20 Vet.App. at 275-77.
After Haas was issued, the Secretary directed the Board Chairman to stay the processing of claims on appeal to the Board that might be affected by Haas. See Ribaudo, 20 Vet.App. at 553. The Board Chairman complied and issued Board Chairman’s Memorandum 01-06-24.[13] See id. The Secretary also notified those whose claims might be affected by Haas, but whose claims were not yet on appeal at the Board, that their claims would not be processed until otherwise directed. See Opposition to the Secretary’s Motion for a Stay Pending Appeal at 18 (filed Feb. 7, 2007) (“Opposition”) (noting that several veterans “have received a letter from the VA stating that his claim might be affected by the Court’s decision in Haas, and that the VA will not take any action on this claim until authorized to do so by the VA General Counsel”); see also id. at Exhibit C-G, paras. 2-5.
As a result of the Board Chairman’s memorandum, Mr. Ribaudo’s claim — which is pending before the Board and determined to be potentially affected by Haas— was stayed. Mr. Ribaudo filed a petition with the Court seeking extraordinary relief. He argued that neither the Secretary nor the Board Chairman had authority to stay the processing of claims on appeal to the Board. In Ribaudo, the Court generally discussed the Secretary’s authority to stay the processing of claims below pending resolution of an appeal of a decision of the Court. The Court also stated that it had jurisdiction to stay the effect of any of its decisions pending appeal to the Federal Circuit and further noted that this could *157 include staying the processing of claims below. However, with regard to the only action before the Court — Mr. Ribaudo’s petition — the Court rescinded Board Chairman’s Memorandum 01-06-24 that instituted the stay of cases at the Board and directed the Secretary to process the administrative appeals that had been stayed by that memorandum. See 20 Vet. App. at 561.
II. Issue Properly Before the Court
It is axiomatic that the Court should not decide matters that are not properly before it. See, e.g., Iron Arrow Honor Soc’y v. Heckler, 464 U.S. 67, 70, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983) (“Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.”); Skinner v. Derwinski, 1 Vet.App. 2, 3 (1990) (“courts may not in any case, even in the interest of justice, extend their jurisdiction where none exists”); Mokal v. Derwinski, 1 Vet.App. 12, 15 (1990) (although not constitutionally bound thereby, Court adopts “Article III case or controversy rubric” as a prudential matter). It is also axiomatic that any stay action should be limited in its scope to restrain only those aspects of the case that give rise to the effects justifying its imposition, see, e.g., Hines v. D’Artois, 531 F.2d 726, 733 (5th Cir.1976); Dellinger v. Mitchell, 442 F.2d 782, 787 (D.C.Cir.1971). In this instance, only the request to stay the processing of cases at the Board pending the appeal in Haas is properly before us.
A. Not Properly Before the Court: Whether Cases Not Yet on Appeal to the Board Should Be Stayed
Of significance to the Secretary’s motion in this instance, Ribaudo did not direct the Secretary to process all claims and it did not rescind any action by the Secretary with regard to any claims other than those pending on appeal to the Board. Indeed, as noted above, the Secretary has stopped processing claims not yet on appeal to the Board and potentially affected by Haas, and that directive has not been challenged here. Moreover, Mr. Ribaudo is not affected by the Secretary’s order staying the processing of claims not yet at the Board, which means there is no party before us with any standing to oppose the Secretary’s request — there is no case or controversy with regard to claims potentially affected by Haas but not yet before the Board.
Assuming arguendo that the Secretary does not have the authority to stay claims not yet on appeal to the Board, and that is a big assumption, see Ribaudo, 20 Vet.App. at 554 n. 2 (stating that the Court would render clear in its decision the scope of the Secretary’s authority to stay processing of claims, and then holding in that decision only that, absent regulation, the Secretary did not have authority to stay processing of claims at the Board as doing so contravened section 7107); Tobler v. Derwinski, 2 Vet.App. 8,12 (1991) (holding that “it would be reasonable for the Board to stay its proceedings in a case that arguably falls within the precedent” of another on appeal) (quoting Ithaca Coll. v. NLRB, 623 F.2d 224, 228 (2d Cir.1980)); see also Ribaudo, 20 Vet.App. at 562 n. 7 (Kasold, J., concurring in part and dissenting in part) (noting that the opinion in Ribaudo has no application to whether the Secretary may stay claims not yet at the Board); but see Ramsey v. Nicholson, 20 Vet.App. 16, 37 (2006) (stating in dicta that the Secretary did not have authority to stay claims not yet at the Board pending an appeal of a decision of this Court), the Court should decide that issue only when properly presented as a case or controversy, with parties of interest on each side. See Mokal, supra; see also Shoen v. *158 Brown, 6 Vet.App. 456, 457 (1994) (Court does not issue advisory opinions).
Prudential reasons also argue for not opening the proverbial Pandora’s Box.[14] Whereas Ribaudo rescinds the administrative stay of claims on appeal to the Board that are potentially affected by Haas (about 1,500), the majority today exercise authority over all claimants whose claims might be affected by Haas, including those potential claimants who may file claims that might be affected by Haas, (estimated by the Secretary as over 832,000[15]), and issue a stay in the processing of those claims, filed and yet to be filed.
The Court is ill-equipped to step into the management of claims-processing by the Secretary. See 38 U.S.C. § 303 (Secretary is responsible for the “control, direction, and management” of the department); cf. Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 66-67, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (noting that “[i]f courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved — which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management”). Indeed, this very fact underlies the balance struck in recognizing an agency head’s general authority to stay the administrative processing of matters pending an agency appeal of a case affecting those matters. See Tobler, supra.
As we stated in Ribaudo, it is the statutory mandate of 38 U.S.C. § 7107 — that claims on appeal to the Board be processed promptly and in regular order— that restricts the Secretary or the Board Chairman from staying claims on appeal to the Board pending an appeal of a decision of the Court and in the absence of any regulation authorizing such action.[16] The number of claims potentially affected by our review of stay requests related to claims on appeal to the Board that might be affected by a decision of the Court that the Secretary has appealed will necessarily be a much smaller number than the entire universe of claims below, and much more amenable to judicial consideration of the matter. See Norton, supra. Our review of the motion should be limited to the *159 request for a stay of claims on appeal to the Board. See Hines and Dellinger, both supra.
B. Not Properly Before the Court: Whether the Effect of Haas Should Be Stayed
With regard to the Secretary’s request that the Court stay the effect of the Haas case, I agree with my dissenting colleagues that such a request should be brought under that case, as instructed in Ribaudo. I note, however, that the heart of the Secretary’s request is not the stay of the effect of Haas; it is staying the processing of the claims potentially affected by Haas. Under the circumstances, a grant of the latter obviates any need for the former because Haas will not be applied as long as the processing of claims potentially affected by Haas is stayed. Thus, there is no need to decide whether the effect of the Haas decision should be stayed and, absent that need, a stay should not be granted.[17]
C. Properly Before the Court: Whether Claims on Appeal to the Board Should Be Stayed
As noted, in Ribaudo we rescinded Board Chairman’s Memorandum 01-06-24 and directed the Secretary to process claims on appeal at the Board previously stayed by the Board Chairman’s Memorandum. In essence, by requesting the Court to now stay the processing of those claims, the Secretary is asking us to stay the effect of our decision in Ribaudo. The parties have opposing interests in this matter, thus presenting a case or controversy, and we have jurisdiction to stay the effect of our cases, which can include staying the processing of claims, as we stated in Ribaudo. See 20 VetApp. at 560. Thus, the issue of whether claims potentially affected by Haas that are on appeal to the Board-should be stayed is an issue that is properly before us, and it is the only issue that we should decide. See Mokal, supra.
III. The Secretary Utterly Fails To Establish the Basis for Granting a Stay
In assessing whether a request for stay should be granted, the Court must consider whether the moving party has made a strong showing regarding the likelihood of success on appeal, whether there is irreparable harm to the moving party, whether the issuance of a stay will substantially injure other parties interested in the proceeding, and whether the public interest is furthered by a stay. See Ribaudo, 20 Vet.App. at 560 (restating the test enunciated in Standard Havens Prods., Inc., 897 F.2d at 512); see also Smith Int’l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1581 n. 7 (Fed.Cir.1988) (where likelihood of success “is less forceful ... a movant would have to make a stronger showing of irreparable harm in order to tip the balance of equity in his favor”). However, the factors need not be given equal weight.
When the moving party fails to establish a strong likelihood of success on appeal, the Court may grant the stay when the moving party demonstrates a substantial case on the merits — that is, “ ‘questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation’ ” — but only when *160 the other three factors noted above collectively weigh heavily in the moving party’s favor. Standard Havens Prods., Inc., 897 F.2d at 513 (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir.1953)); see also Alaska Cent. Express, Inc. v. United States, 51 Fed.Cl. 227 (2001) (if equities weigh heavily in favor of maintaining status quo, court may grant injunction where question raised is novel or close). In essence, the “more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.” Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 387-88 (7th Cir.1984).
A. First Factor — Likelihood of Success
Assessing the likelihood of success is perhaps the most difficult of the factors because, in a real sense, it calls upon a Court to assess its own opinion. In a district court decision or a single judge decision of this Court, the likelihood-of-success analysis truly involves critiquing one’s own decision. In this case, however, the underlying decision, Haas, was issued by a three-judge panel of the Court, and the likelihood of success is being assessed by the full Court, including four judges that were not on the panel that issued the Haas decision.
In its essence, the Court in Haas simply found that a longstanding interpretation of the Secretary as reflected in the M21-1 is not inconsistent with statute or regulation, that the M21-1 had the force and effect of regulation, and that the Secretary’s recently revised interpretation of statute and regulation was not to be given deference in light of his previous and longstanding interpretation. Further, the Court found that a recent revision of the M21-1 had no effect, and it was set aside because it was modified without notice and opportunity to comment in violation of the APA. Because, as the majority note, the Federal Circuit has no jurisdiction over the Court’s finding with regard to facts, see 38 U.S.C. § 7292; Forshey v. Principi, 284 F.3d 1335, 1359 (Fed.Cir.2002) (en banc), the Court’s finding that the Secretary had a longstanding interpretation of statute and regulation that was recently modified is significant. This finding strongly supports the decision in Haas that the Secretary’s recently revised interpretation should not be given deference. See INS v. Cardoza-Fonseca, 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (maintaining that an agency’s interpretation of a statute or regulation that conflicts with a prior interpretation is “ ‘entitled to considerably less deference’ than a consistently held agency view” (quoting Watt v. Alaska, 451 U.S. 259, 273, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981))). Moreover, settled case law underlies the conclusion in Haas that the substantive provisions of the M21-1 addressing service in Vietnam for purposes of the presumption of exposure to herbicides have the force and effect of law. See Haas, 20 Vet.App. at 276-76 (citing Hamilton v. Derwinski, 2 Vet.App. 671, 675 (1992), and Fugere v. Derwinski, 1 Vet.App. 103, 107 (1990)).
The majority avoid any characterization that there is a likelihood of success on appeal, and focus instead on the serious and substantial nature of the issues, as well as the novelty of the issue. The majority’s analysis, however, ignores the fact that this factor does not stand alone. Rather, even when there is a serious and substantial issue involved, the totality of the equities nevertheless must weigh heavily in favor of the status quo before a stay should be granted. See Standard Havens Prods., Inc., 897 F.2d at 513; Alaska Cent. Express, Inc., 51 Fed.Cl. at 230 (if equities weigh heavily in favor of maintaining status quo, court may grant *161 injunction where question raised is novel or close (citing Standard Havens Prods., Inc., 897 F.2d at 513)). As is shown below, the Secretary utterly fails to demonstrate that the remaining factors weigh in his favor at all, let alone heavily in his favor. Indeed, accepting arguendo the majority’s conclusion that factors one and four weigh in favor of the Secretary while factors two and three weigh in favor of the nonmoving parties, even the majority do not characterize the equities as weighing heavily in favor of the status quo.[18] See Standard Havens Prods., Inc. and Alaska Cent. Express, Inc., both supra.
B. Second Factor — Irreparable Harm
The risk of any harm to the Secretary in proceeding to process claims at the Board is minuscule in the grand picture, and the risk of irreparable harm is nonexistent. Even if — as the Secretary posits without presenting any factual basis[19] — the decision in Haas could extend the presumption of Agent Orange exposure to approximately 832,000 veterans not previously covered, the order in Ribaudo, as noted, affects only the processing of the 1,500 claims pending before the Board. Moreover, it is unlikely that all 1,500 of these claims will be processed prior to a Federal Circuit decision in Haas because there is a statutorily prescribed order of processing of claims at the Board, which in fiscal year 2006 decided 39,076 claims, with 40,265 pending at the end of the year.[20] Similarly, during the appeal period, the amount of money awarded and paid with regard to claims on appeal to the Board is limited, and any payments made may be recouped should the Secretary prevail on appeal. See 38 C.F.R. §§ 3.105(d), 3.114(b) (2006) (providing for severance of service connection because of a change in or interpretation of a law); see also 38 C.F.R. § 1.911 (2006) (procedure for collection of debts owed by reason of participation in a VA benefits program).
Further, with regard to administrative burdens and costs, the claims potentially affected by Haas will have to be processed in any event, so the only additional burden or cost associated with processing them now is that related to future recoupment efforts. Although the majority highlight this additional burden associated with about 832,000 potential claims, the burden is orders of magnitude less when considering only those claims on appeal to the Board. Moreover, the costs of administering the effect of an appeal has been rejected as a factor for consideration in whether a stay should be granted or denied. See UST, Inc. v. United States, 831 F.2d 1028, 1032 (Fed.Cir.1987) (expenses and effort involved in litigation do not constitute “irreparable injury”). Simply stated, and as even determined by the majority, any harm to the Secretary is not irreparable; it is not “a viable threat of serious harm which cannot be undone.” Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed.Cir.1983).
C. Third Factor — Substantial Injury to Other Parties Interested in the Proceeding
In contrast to an assessment of the effect on the Secretary, which involves an *162 assessment of any “irreparable harm,” the third factor looks to whether the issuance of a stay will cause “substantial injury” to parties interested in the proceeding. See Capacchione v. Charlotte-Mecklenburg Schools, 190 F.R.D. 170, 175 (W.D.N.C.1999). Given the nature of the claims in question — disability compensation claims of veterans who served in Vietnam during the war — the harm to the individual veteran whose claim is stayed pending appeal is significant. See Cervantez v. Sullivan, 719 F.Supp. 899, 906 (E.D.Cal.1989) (rejecting argument that retroactive payment of disability benefits remedied denial of claim later found to be improper); see also Schweiker v. Chilicky, 487 U.S. 412, 428, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (stating that a wrongful termination of benefits upon which a claimant “depend[s] for the very necessities of life cannot be fully remedied by the ‘belated restoration of back benefits’ ”); Leschniok v. Heckler, 713 F.2d 520, 524 (9th Cir.1983) (“We fail to comprehend the Secretary’s argument that financial compensation at some future date, should the claimants survive and prevail, mitigates the hardship which is visited upon claimants and their families each and every day.”).
In opposition to the Secretary’s request for a stay, information has been submitted with regard to two veterans who served in the Navy during the Vietnam War and were awarded the VSM, and whose claims are on appeal to the Board and affected by the Court’s decision herein. In one case, a veteran was diagnosed with diabetes melli-tus, peripheral neuropathy related to the diabetes that may be related to Agent Orange exposure, and several other disabilities. His only source of monthly income is $1,332 in Social Security Disability Income. His claim has been pending since 2003. He asserts that he can afford to pay for prescriptions, groceries, and utilities, but cannot afford to purchase anything other than the absolute necessities of life and cannot pay off any debt, thus causing a great deal of stress and economic hardship. See Opposition at Exh. E.
In the other case, a veteran was diagnosed with chronic lymphocytic leukemia (CLL) that may be related to Agent Orange exposure. His only source of monthly income is $1,600 in Social Security Disability Income. His claim has been pending since 2004. He asserts that he has completely depleted his savings and retirement accounts, has been unable to pay back-taxes owed, cannot afford to pay part of his child-support payments, and has been harassed by bill collectors because he has been unable to pay approximately $1,000 in hospital bills related to his CLL. He further asserts that his insurance and utility expenses are $1,000 a month, that he cannot afford homeowner’s insurance, has difficulty maintaining the most basic lifestyle, and cannot afford to take his children for an inexpensive meal when he has custody of them. See Opposition at Exh. G. I wholeheartedly agree with the majority in its conclusion that “the delay suffered by these claimants is consequential,” ante at 143, but I further note that these are only two examples out of 1,500 claims pending decision by the Board; we can only speculate how many of these veterans whose claims are stayed at the Board are similarly afflicted.
D. Fourth Factor — Public Interest
The final factor, in this instance, is the easiest to assess because it weighs extraordinarily against the Secretary, and screams in favor of not granting the stay. As President Abraham Lincoln so movingly and profoundly stated: “To care for him who shall have borne the battle and for his widow, and his orphan.” This is not only the motto of VA, it is a core value of our Nation. It is expressed in numerous ways, *163 not the least of which is the “uniquely pro-claimant character of the veterans’ benefits system” created by Congress, Disabled Am. Veterans v. Sec’y of Veterans Affairs, 327 F.3d 1339, 1349 (Fed.Cir.2003). This system provides the benefit of the doubt to the claimant when the evidence does not weigh against the claim, see 38 U.S.C. § 5107(b). It also requires the prompt rendering of decisions in regular order by the Board, see 38 U.S.C. § 7107, the expeditious rendering of decisions by the agency of original jurisdiction on remand from the Board, see 38 U.S.C. § 5109B, and the expeditious rendering of decisions by the Board on remand from the Court, see 38 U.S.C. § 7112.
It is well recognized in the context of Social Security disability compensation that the very nature of such claims is a factor that weighs heavily against a stay in the processing of those claims; more so when the claims involve disability compensation for veterans! See Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir.1983), rev’d on other grounds, 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983); see also Walters v. Nat’l Assoc. of Radiation Survivors, 473 U.S. 305, 312, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (acknowledging that VA benefits are similar to the Social Security benefits). Indeed, in such cases,
the question of the public interest is inseparable from the issue relating to the relative hardship suffered by litigants .... It is not only the harm to the individuals involved that we must consider in assessing the public interest. Our society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges. Society’s interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required. It would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for any period of time. It would be unfortunate, but far less harmful to society, were the government to succeed in overturning the preliminary injunction but be unable to recoup all or a portion of the funds.
Lopez, 713 F.2d at 1437-38. The public interest is inseparable from the government’s interest in providing for the public welfare, and when, as here, the balance of the other factors weigh in favor of the veteran, the balance is overwhelmingly in favor of denying a stay that would delay the processing of veterans claims. See id. at 1437.
Further, directly pertinent to this case is the fact that Congress has explicitly expressed public policy in 38 U.S.C. § 7107 to the effect that claims on appeal to the Board are to be processed promptly and in regular order with limited deviation from that regular order, as we so recognized and held in Ribaudo. The examples discussed in the above section certainly underlie this Congressional intent, and they exemplify why issuance of a stay in the circumstances of this case amounts to a rejection of that Congressional intent. Moreover, although section 7107 was enacted before creation of the Court, it has been amended on several occasions since that time without any authorization or indication that claims should be stayed at the Board pending appeal of a case that might affect a decision on those claims. See Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 184-85, 108 S.Ct. 1704, 100 L.Ed.2d 158 (1988) (“We generally presume that Congress is knowledgeable about existing law pertinent to legislation it enacts.”). This is not to say the Court could not grant a stay in the processing of claims at the Board should the other factors warrant it, but public policy, standing *164 alone, weighs against doing so, as does the totality of the circumstances in this instance.
Although in its discussion of possible irreparable harm suffered by the Secretary the majority consider the need on the part of the Secretary to institute efforts to recoup payments made to veterans should Haas ultimately be overturned, the analysis is faulty because it runs off the red herring estimate of over 832,000 potential claims being processed pending resolution of the Haas appeal.[21] It is also interesting that the en banc Court in Ribaudo criticized the scope of Board Chairman’s Memorandum 01-06-24 for the very reason that it was not limited to a stay pending decision by the Federal Circuit, but could extend for many years until decision by the Supreme Court or even legislative action by Congress, see Ribaudo, 20 Vet.App. at 559, yet the majority today lay out this very possibility of an extended delay in the adjudication of the appeals in Haas — during which the majority note that possibly hundreds of thousands of claims might be processed and paid only to require recoupment action to the detriment of the processing of other claims should Haas be overturned — as a public policy consideration in favor of granting the stay. The Secretary’s unsupported argument not only grossly exaggerates the effect of not granting a stay,[22] this type of extreme-potential-fear analysis ignores the reality that the very creation of the Court and the right to judicial review carry with it the fact that the Secretary has to readjudicate thousands, even hundreds of thousands of claims, based on our decisions on a regular basis, necessarily delaying the processing of other claims. This is a cost of judicial review and a very reason why the costs of implementing judicial decisions are not a factor to consider when assessing whether to stay actions below. See UST, Inc., supra.
IV. Partial Grant of a Stay
In apparent recognition that its broad stay order will ensnare many whose individual circumstances cry out for prompt decision as well as apparent recognition of the futility of having every such individual apply to the Court for an exception to the stay, the majority explicitly note that the Secretary has equitable authority that is not bounded by the stay order. The ma *165 jority also carve out an exception to the stay order that permits the Board to process cases before it. Both are illusory relief from the harsh effects of the stay, akin to telling the chicken he is safe because he is guarded by the fox. The Secretary has appealed Haas. He does not want to process claims affected by Haas— indeed, that is the basis of his motion for a stay — and, given the option not to, there is absolutely no reason to conclude that he would grant equitable relief or that the Board would process a claim applying a decision with which the Secretary disagrees. Cf. Padgett v. Nicholson, 473 F.3d 1364, 1370 (Fed.Cir.2007) (finding it reasonable to believe, absent direction otherwise, that the Secretary will continue in his course of action).
V. Conclusion
In this instance, the only issue properly before the Court is the Secretary’s request to stay the processing of claims on appeal to the Board that might be affected by the Haas decision, which is now on appeal to the Federal Circuit. The Secretary falls far short of demonstrating that the processing of claims on appeal to the Board should be stayed. He has not demonstrated a substantial likelihood of success on appeal in the Haas case. To the degree the issues on appeal are serious and substantial, he has not demonstrated that the other factors weigh heavily in favor of the status quo, to wit: he has not demonstrated that he would suffer irreparable harm, that other parties interested in the proceeding will not suffer substantial injury, or that public policy weighs in favor of a stay. Indeed, the totality of the circumstances and facts in this case overwhelmingly demonstrate just the opposite.[23] There is simply no basis for granting the Secretary’s motion, and it should be denied.

. See ante at 144, n. 2.

. The Vietnam Service Medal generally is awarded, inter alia, "to all members of the Armed Forces of the United States serving at any time between July 4, 1965 and March 28, 1973, in Vietnam, its contiguous waters, or airspace, thereover.” Department of Defense Regulation 1348.33-M para. C6.6.1 (2006); see also Exec. Order No. 11,231 (1965).

. Given the independent status of the Board and separate statutory duty of the Board Chairman to process claims before the Board promptly, and at times expeditiously, the authority of the Secretary to direct the Board Chairman to stay the processing of claims at the Board is itself questionable. See, e.g., 38 U.S.C. §§ 7101 (Chairman is under supervision of the Secretary, but Chairman has administrative control of the Board and Chairman may only be removed from his office by the President), 7104 ("Final decisions on such appeals shall be made by the Board.”), 7107(a)(1) (claim on appeal to the Board "shall be considered and decided in regular order according to its place upon the docket”), 7112 (expeditious processing by Board of remands from Court). Nevertheless, the Board Chairman issued the stay order, and the Secretary’s authority to direct him to do so is neither otherwise raised by this motion nor before the Court.

. "Zeus, determined to avenge himself on Prometheus, presented this femme fatale to Epimetheus (Prometheus’ brother), first arming her with a jar containing all the evils of the world. After Epimetheus foolishly accepted the gift, Pandora proceeded to open the jar, thereby loosing a panoply of torments upon humanity.” United States v. Watson, 386 F.3d 304, 308 n. 2 (1st Cir.2004) (citing R. Warner, Encyclopedia of World Mythology 29-31 (1975)).

. This number of actual and potential claims — 832,000—is a red herring and is for consideration, if at all, only as the totality of claims affected by Haas should the Secretary’s appeal be denied. Regardless of the Secretary’s success on appeal, each claim still requires processing, and there is no basis for concluding all of these claims would be submitted, processed, and paid before the Federal Circuit renders its decision. Whatever the number is, however, it is certainly larger than the estimated 1,500 claims on appeal to the Board that might be affected by Haas, and it is good reason to not substitute the Court for the Secretary in deciding whether all of these claims should be stayed in the first instance.

.As noted in my concurrence in Ribaudo, there are no regulations currently extant that provide authority for the Board Chairman to stay claims at the Board pending an appeal of a decision of the Court. See 20 Vet.App. at 561 (Kasold, J., concurring in part and dissenting in part). Because such regulations have not been promulgated, the Court need not decide whether authorizing a stay at the Board would be a permissible exercise of the Secretary’s authority under 38 U.S.C. § 501.

. I note that the factors weighing against granting a stay in the processing of claims at the Board generally are applicable to consideration of a stay in the effect of the Haas decision, with the latter having the added factor that a stay in the effect of Haas without a concomitant stay in the processing of claims would seem to serve nobody's interest, as least as articulated in the pleadings, because claims would be denied, to the dissatisfaction of the veteran, only to potentially give rise to the concern of the Secretary that they would then have to be readjudicated.

.Relying on Standard Havens Prods., Inc., 897 F.2d at 512, the majority seem fixated on the notion that the grant of a stay "rests entirely within our discretion.” Ante at 148. The Secretary, as movant, carries the burden to make the necessary showings for grant of a stay, see Standard Havens Prods., Inc., 897 F.2d at 512, and he fails to meet that burden.

. The Secretary has provided the Court nothing but his bare and bald assertion — no affidavit, no historical data, nothing. See also supra note 15.

. See Report of the Chairman, Board of Veterans' Appeals, Fiscal Year 2006, at 21.

. In search for public policy the majority give the possibility of recoupment action double duty in that this possibility also forms the basis of the majority’s analysis as to harm, albeit not irreparable, that the Secretary might encounter should a stay not be directed and his appeal ultimately granted. See Cuomo v. Nuclear Regulatory Comm’n, 772 F.2d 972, 978 (D.C.Cir.1985) (summarily dismissing arguments made regarding the public interest "since they essentially rehearse petitioners’ arguments about the irreparable harm”).

. The Secretary was expected to process some 910,000 claims, with the Board processing about 39,000 appeals, in fiscal year 2006. In this context, even if recoupment action were necessary with regard to all of the approximately 1,500 claims on appeal to the Board that might be affected by Haas, the effect on the overall processing of all claims below would be insignificant, and just another course of business. Similarly, the dollars associated with the claims at the Board that might be affected by Haas, even if all were processed during the appeal period, is insignificant in a budget that allocated approximately $31.3 billion to veterans’ disability compensation claims in fiscal year 2006. See Budget of the United States Government, FY 2006, at http://www.whitehouse.gov/omb/ budget/fy2006/veterans.html (last visited Mar. 23, 2007). In further contrast, this pales in comparison to the billions spent on fighting the Vietnam War, which was fought by the veterans affected by any stay in this case. Unlike those expenses, the Secretary can stop the payment of benefits if he is successful on appeal, and he can initiate recoupment proceedings if he so deems it appropriate.

. The grant of a stay under the circumstances of this case — with, among other factors, unsubstantiated and patently inflated representations that the Secretary would be forced to decide hundreds of thousands of claims and suffer significant burdens related to those decisions — makes it difficult to envision under what circumstances a stay request will be denied (short of perhaps an arbitrary and capricious request — which, as a practical matter, shifts the burdens of proof from the Secretary to the veteran). It also effectively places the Court in the position of providing a rubber-stamp approval for the Secretary to do exactly what the en banc Court unanimously held in Ribaudo that statute and congressional policy precluded him from doing. See Ribaudo, supra; see also N.L.R.B. v. Brown, 380 U.S. 278, 291, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965) (“Reviewing courts are not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.”).